No. 871 *.—Asociación de Padres Capuchinos de Pennsylvania en Puerto Rico, peticionaria, v. Corte de Distrito de San Juan, Hon. Pablo Berga, Juez, demandada.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR WOLF.

Desde el punto de vista de nuestra jurisprudencia corriente, el extremo más importante en este caso es la interpretación que debe dársele al artículo 175 del reglamento de la Ley Hipotecaria. No obstante un número de asunciones en favor de la aquí peticionaria, el caso pudo y debió ser resuelto en sus hechos.

Puede, pues, asumirse de momento que en este procedimiento de *certiorari* teníamos el derecho de indagar si la corte ejerció o no suficientemente su discreción o se valió· de todos los medios a su alcance para investigar la autoridad de los abogados para incoar un procedimiento ejecutivo a nombre de M. L. de Soto, o para averiguar la existencia o inexistencia del allí demandante, M. L. de Soto. Partiendo de esa asunción, sostengo que el peticionario ante nos jamás controvirtió suficientemente la presunción de autoridad que existe a favor de la debida comparecencia de un abogado. Cuando un abogado comparece a nombre de una parte, debe presumirse necesariamente la existencia de esa parte, así como el hecho de que el letrado derivó su autoridad de ella.

La opinión de la mayoría reconoce literalmente que la presunción a favor del derecho de un abogado a comparecer en representación de una parte es fuerte, pero esa opinión necesariamente consideró o bien que la presunción fué destruída o que en supuestos casos sospechosos el deber de la corte, aun en un procedimiento sumario bajo la Ley Hipotecaria, era hacer una investigación más amplia. La base de la opinión de la mayoría fué que la corte inferior no fué tan lejos como debió.

La actuación de la corte se hizo depender exclusivamente del *affidavit* de Henri Brown, uno de los abogados de los Padres Capuchinos. Él hizo una demostración, por supuesto, fuerte, fundada en información y creencia, en el sentido de que no había en Santo Domingo comerciante alguno de nombre M. L. de Soto, según se alegó en el escrito inicial presentado en la corte inferior. El declarante manifestó que había hecho un gran número de gestiones

* Véase la opinión de la mayoría en la página 680.

encaminadas a probar por medio de varias personas en Santo Domingo que ellas jamás habían· oído hablar de M. L. de Soto. Sin embargo, información obtenida de bancos y comerciantes no me convencería de que una persona cuya ocupación natural sea el comercio, no haya de existir, no obstante ser desconocida por los que facilitaron la información al declarante.

Se dijo, en síntesis, que M. L. de Soto, comerciante, soltero, y residente en Santo Domingo, presenta un escrito inicial, etc. M. L. de Soto pudo dedicarse al comercio y haberse retirado. Es fácilmente posible que una persona que una vez fué comerciante y cuyas actividades hayan cesado, no sea conocida por los comerciantes o banqueros, especialmente si no tiene cuentas en los bancos. Es cuestión de conocimiento común en Puerto Rico que muchas personas no depositan su dinero en los bancos. No trataré de analizar todas las posibidades no excluídas por la declaración jurada del Sr. Brown.

No pongo en duda la jurisprudencia citada por este Tribunal al efecto de que la inexistencia de una persona no puede probarse por testimonio positivo sino que debe establecerse mediante la razonable exclusión de la posibilidad contraria. En un juicio criminal donde quizá se precisa la mayor prueba, una persona puede ser convicta sobre evidencia circunstancial. No sostengo que la evidencia en un caso civil deba ser tan robusta como la que se exige en un caso criminal, pero no puede surgir duda alguna de que la presunción a favor de la debida comparecencia de un abogado es tan fuerte y tan necesaria para la administración de justicia, que un *affidavit* debe excluir toda posibilidad razonable de que el demandante en el procedimiento ejecutivo en realidad existía. Desde el tiempo del caso de Osborn y de la opinión del Juez Presidente Sr. Marshall en él, la fuerza de la presunción en favor de un abogado ha tomado incremento más bien que disminuído. *Osborn* v. *The U. S. Bank,* 9 Wheat, 738; Nota sobre el caso de *McAlexander* v. *Wright,* 16 Am. Dec. 98; *Doe* v. *Abbott,* 126 Am. St. Rep. 30, y nota.

La cuestión de si la presunción había sido vulnerada fué presentada a la corte de distrito. Haya esa corte o no llegado a su conclusión mediante un proceso mental similar al del que suscribe, lo cierto es que la corte inferior estimó que esa presunción no había sido destruída por el *affidavit* del Sr. Brown. La corte tuvo ante sí toda la evidencia, y, como en cualquier otro caso, tenía derecho a apreciarla, y su conclusión debió ser final para esta corte. Puede decirse que en este caso no había otra cosa envuelta que la apreciación de la evidencia. Consideraré ahora otros aspectos del caso.

La ley define el auto de *certiorari* así:

"El auto de *certiorari* es un auto expedido por un tribunal superior a otro inferior, por el cual se exige del último la remisión al primero, de una copia certificada de las diligencias pendientes en el tribunal (corte) inferior o los autos de alguna causa ya terminada, en aquellos casos en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley, y con objeto de terminar los procedimientos cuando el tribunal inferior rehusare hacerlo fundado en bases erróneas." (Estatutos Revisados de 1911, sección 1349).

El hecho de que la corte pueda o no haber estado equivocada en la apreciación de la prueba no es un error de jurisdicción o procedimiento, ni revisable por *certiorari*. *Arribas* v. *Corte de Distrito,* 9 D.P.R. 484; *Axtmayer* v. *Juez de Distrito,* 14 D.P.R. 643; *Del Toro* v. *Corte Municipal,* 16 D.P.R. 93.

Hay otra cuestión de procedimiento que el que suscribe cree debe ser decisiva del caso. La Asociación de Padres Capuchinos jamás llegó a ser parte en el procedimiento hipotecario, según yo entiendo la ley. El reglamento para la ejecución de la Ley Hipotecaria dispone que los acreedores posteriores deben ser notificados del procedimiento, pero no se convierten en partes. Esto sólo les proporciona la oportunidad de comparecer a la venta pública y subastar la propiedad. Empero, como la Asociación de Padres Capuchinos era la dueña del terreno en que estaba enclavado el edificio hipotecado, y como había radicado un pleito y anotado un aviso de *lis pendens* en el registro, era conveniente notificarla del procedimiento ejecutivo. Esto no · hizo parte a la Asociación de Padres Capuchinos, y la conclusión que aparece en la solicitud en el sentido de que la referida asociación fué hecha parte es injustificada.

Un acreedor que embarga, también podría anotar su pleito en el registro y una corte podría de igual modo pero innecesariamente notificarle del procedimiento hipotecario.

Procederé ahora a considerar la interpretación del artículo 175 del Reglamento para la ejecución de la ley hipotecaria. Éste es un caso claro de *expressio unius est exclusio alterius.* La naturaleza sumaria del procedimiento, sólo puede ser cambiada en los casos que se especifican. El artículo 14 del Código Civil de Puerto Rico, edición de 1930, lee como sigue:

"Cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu."

El artículo 175 no quiere decir que a opción de una parte o de una corte cualquiera· materia puede· ser investigada, sino que todos los asuntos, excepto los enumerados en ese artículo, son relegados a una acción plenaria en que puede suscitarse cualquier cuestión. Si alguna cosa no debe ser puesta en tela de juicio en un procedi-

miento sumario en virtud de la Ley Hipotecaria, es el poder de representar a una parte. Si así fuese, un acreedor podría con frecuencia, si no siempre, ser requerido a probar el poder de su abogado, en casos fáciles de imaginar.

Los autos demuestran que la Asociación de Padres Capuchinos tenía un pleito pendiente y lo había anotado en el registro. Al igual que si se tratase de un deudor o de cualquiera otra persona que pudiera tener una reclamación sobre la propiedad, tal vez pudo haberse radicado una demanda complementaria en el mismo pleito para lograr que se ventilaran las imputaciones de fraude y conspiración hechas por lá Asociación de Padres Capuchinos contra Manuel Tous Soto y María Rivera Quiles. No veo que se cometa injusticia alguna al exigírsele a un deudor o a cualquiera otra persona recurrir a un pleito plenario para impugnar un procedimiento ejecutivo. Si han de crearse obstáculos al cobro de las deudas, la dificultad para obtener dinero una persona sería mayor. Esto se hizo lo suficientemente claro en la exposición de motivos para la aprobación de la Ley Hipotecaria. El procedimiento no es tan drástico como el que existe en varios de los estados de la Unión Americana, donde en lugar de la hipoteca ordinaria se otorgan escrituras de *trust* por virtud de las cuales los *trustees* tienen facultad para vender sin necesidad de un procedimiento judicial, previa publicación de un anuncio en los periódicos en el sentido de que la propiedad será vendida en cierta fecha y en determinado sitio, desde luego, después que el deudor ha incurrido en mora.

No veo motivo para hacer una excepción en este caso, y lo actuado por la corte de distrito no debió anularse.

Estoy autorizado para decir que el Juez Asociado Sr. Aldrey está conforme con esta opinión.