HOUSING INVESTMENT CORP., demandante y recurrida, *v.* ALBERTO J. LUNA QUEZADA, demandado; HIPÓLITO VÁZQUEZ, interventor y peticionario.

*Número:* O-81-623     *Resuelto:* 26 de febrero de 1982

*María Dolores Fernós, Frances Díaz Medina* y *June I. Ortiz,* de Servicios Legales de Puerto Rico, Inc., abogadas del peticionario; *Madelaine Riefkhol Gorbea,* de *Fiddler, González & Rodríguez,* abogada de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El deudor demandado Luna Quezada compró el 22 mayo, 1975 una casa vivienda y solar de 257.20 m/c identificado con el Núm. 2 del Bloque "JN" en Puerto Nuevo, y en la misma fecha, en garantía del precio de $53,750, intereses al 8½% anual y plazos de amortización de $413.34 mensuales otorgó a favor de la recurrida Housing Investment Corp. primera hipoteca sobre el inmueble adquirido. Se desprende de autos que el comprador y deudor hipotecante añadió una segunda planta a la casa y la dividió en apartamientos, uno de los cuales dio en arrendamiento como al año y medio de la compra y por canon mensual de $180.00 al interventor peticionario Hipólito Vázquez. El arrendador y deudor hipotecario dejó de pagar los plazos, por lo que su acreedora Housing Investment instó acción ejecutiva por la vía sumaria, obtuvo sentencia el 27 febrero, 1981 y le fue adjudicada la buena pro en subasta el 24 septiembre, 1981. Requeridos por el Alguacil los inquilinos del deudor para que desalojaran el inmueble, el recurrente Vázquez formuló solicitud de intervención y paralización de procedimientos fundada en que no había sido notificado del procedimiento de ejecución de hipoteca ni había sido oído, en perjuicio de su derecho contractual. La sala de instancia denegó la intervención del inquilino y le concedió prórroga del término para desalojar, apercibido de lanzamiento. Contra dicha actuación, recurrió el arrendatario en *certiorari* esencialmente

predicado en violación de la Ley de Alquileres Razonables y falta de debido proceso en la orden que dispone supresión de su posesión de arrendatario y lanzamiento sin previa audiencia. El 12 noviembre, 1981 expedimos el auto de *certiorari*, y sometido el alegato de oposición de la recurrida, el caso se halla listo para decisión en sus méritos.

Está planteada ante el Tribunal la cuestión de si el cambio de titular del inmueble arrendado como resultado de ejecución y venta forzosa resuelve y extingue el contrato de arrendamiento, o si la relación contractual arrendaticia subsiste a la pérdida de título y propiedad en el arrendador determinada por la ejecución de la hipoteca acordada y constituida por éste. El Art. 15 de la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 205, dispone en su apartado (b) que "[e]n todo caso de venta, cesión o enajenación de propiedad arrendada, el contrato de arrendamiento que el inquilino tuviera con el dueño anterior se entenderá subsistente y sujeto a la prórroga [involuntaria] que especifica [el Art. 12]". El concepto "venta" equiparado en línea con actos de libre voluntad del dueño como lo son la "cesión" y "enajenación" de la propiedad, no incluye la venta forzosa en subasta pública. Nuestra decisión en *Asoc. de Condómines* v. *Naveira*, 106 D.P.R. 88, 94 (1977), no es precedente en contrario porque el concepto allí interpretado del Art. 41 de la Ley de Propiedad Horizontal es el de "adquirente" y no el de vendedor o cedente.

Tanto la Ley Hipotecaria como la de Alquileres Razonables cumplen propósitos de gran valor social. En nuestra patria, particularmente, operan entrelazadas en el común objetivo de fomentar la adquisición de viviendas, en sí legítima ambición de nuestra gente encarnada en firme y perdurable política pública. Sólo el uso del crédito, dentro de la economía inflacionaria-recesiva que ha asentado su presencia, le permite al puertorriqueño de hoy hacerse de un hogar. Por otro lado, la Ley de Alquileres Razonables, aun limitada en su ámbito por la exención de

su Art. 4, enmendado, excluyente de viviendas con canon de $200 o más por mes, y locales de negocio con canon de $400 o más; y en su razón de existir por los extensos cambios operados en nuestra economía nacional desde el año 1946 en que fue aprobada, todavía brinda protección a una clase de inquilinos, en vías de extinción, cuyos ingresos los descualifica para disfrutar una vivienda pública, sin que basten para sufragar el costo de la privada. A tal extremo el vigente régimen arrendaticio de fincas urbanas, aun cuando no es propiamente Derecho social, sino legislación excepcional dirigida a atender una situación de necesidad cambiante, sí tiene un acentuado matiz social y pisa los umbrales de ese Derecho. Toda vez que nuestra ley, a diferencia de la española, (1) nada provee sobre

---

(1) En España la cuestión de extinción del arrendamiento por causa de resolución de la propiedad o titularidad del arrendador ha sido atendida en la ley de 1956 y en la actual refundida de 24 diciembre, 1964 (Medina y Marañón, *Leyes Civiles de España*, 12ma ed., Madrid, Ed. Reus, 1964, T. 2, pág. 899 y ss., nuevo ordenamiento que Roca Sastre explica así:

"Pero en la ley especial vigente sobre arrendamientos urbanos, la causa 12 del art. 114 de la misma sólo faculta al arrendador para instar la resolución del arrendamiento otorgado por el usufructuario, una vez extinguido el usufructo, cuando el titular dominical *pruebe que las condiciones pactadas para el arrendamiento por el usufructuario anterior fueron notoriamente gravosas para la propiedad*. En este precepto se contempla un caso típico de resolución del derecho del arrendador, pero en él se presupone la regla de subsistencia del arrendamiento concertado por el usufructuario a pesar de extinguirse el usufructo, y sólo por excepción *se admite* la resolución cuando se verifique aquella prueba de *ser gravosas para la propiedad las condiciones pactadas* en el arrendamiento.

"Y como según el art. 8.º de la misma ley especial de arrendamientos urbanos los Tribunales deberán aplicar los preceptos de la misma por *vía de analogía* cuando la cuestión debatida, no obstante referirse a las materias reguladas en la propia ley, no aparezca expresamente en la misma una norma específica, de ahí que por aplicación analógica del criterio de subsistencia del arrendamiento a pesar de resolverse la propiedad o titularidad del arrendador, debe ser aplicado al caso concreto que aquí nos ocupa, sin más *excepción* que la expresada de un arrendamiento concertado en *condiciones gravosas para la propiedad*. Claro está que la sentencia de 23 de junio de 1951 declara no poderse aplicar por analogía un precepto que lleve consigo la pérdida de un derecho, pero entendemos que si se aplica el criterio de subsistencia del arrendamiento a pesar de resolverse la propiedad o titularidad del arrendador, también ha de aplicarse aquella *excepción* que puede implicar la resolución del arrendamiento pactado en

subsistencia del arrendamiento cuando la finca hipotecada es objeto de venta forzosa, en oposición a la final realización del crédito hipotecario mediante toma de posesión del inmueble por el acreedor o adjudicatario en subasta, la interpretación judicial está llamada a llenar la laguna y suplir el puente de armonía entre la Ley Hipotecaria y la de Alquileres Razonables, pues dichos estatutos no se eliden y sí se complementan en un objetivo común de fomentar la adquisición y preservación de la vivienda. En vista de que nuestra legislación arrendaticia no tomó en consideración la posible extinción del arrendamiento por causa de resolución de la propiedad o titularidad del arrendador, hemos de acudir a la norma del Art. 12 del Código Civil: en las materias que se rijan por leyes especiales, la deficiencia de éstas se suplirá por las disposiciones del Código, y así lo tiene resuelto este Tribunal en materia de arrendamientos urbanos. *Agulló* v. *ASERCO*, 104 D.P.R. 244, 248 (1975); *Galiñanes Hnos.* v. *Tribunal Superior*, 77 D.P.R. 881, 888 (1955). El Derecho civil, general o común, es supletorio, en relación con las

condiciones gravosas para la propiedad. Estimamos que este mismo criterio es aplicable a los arrendamientos otorgados por el fiduciario una vez deferido el fideicomiso al fideicomisario o fideicomisarios.

"De este modo hay que concluir que la ejecución hipotecaria por regla general no extingue el arrendamiento de la finca anteriormente hipotecada, pero que existe dicha excepción en el arrendamiento concertado gravosamente para la propiedad." (Énfasis en el original.) *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 2, págs. 1165–1166.

El texto refundido de la Ley española de 1964 en el articulado pertinente dice:

Art. 114: "El contrato de arrendamiento urbano, lo sea de vivienda o de local de negocio, podrá resolverse a instancia del arrendador por alguna de las causas siguientes:

. . . . . . . .

12. En los casos de extinción de usufructo, cuando el titular dominical pruebe que las condiciones pactadas para el arrendamiento por el usufructuario anterior fueron notoriamente gravosas para la propiedad."

Art. 8: "En aquellos casos en que la cuestión debatida, no obstante referirse a las materias que esta Ley regula, no aparezca expresamente prescrita en la misma, los Tribunales aplicarán sus preceptos por analogía."

demás ramas del Derecho, en todas las materias que se rijan por leyes especiales. El Tribunal Supremo de España también considera propio el recurso al Código Civil para remediar deficiencias de su Ley de Arrendamientos Urbanos, cuando no proporcione solución la analogía ordenada en el Art. 8 (Ss. de 23 marzo, y 9 julio, 1953).(²) En la actualidad la deficiencia de nuestra Ley de Alquileres Razonables es la misma que mostraba la española de Arrendamientos Urbanos antes de 1956 y que dio lugar al dictamen de Roca Sastre, de intocada validez en nuestro ordenamiento contemporáneo:

> Pero como esto [la falta de provisión sobre extinción del arrendamiento por causa de resolución de la titularidad del arrendador] entrañaba una laguna y esta laguna no podía llenarse por el criterio de analogía que la ley especial de arrendamientos urbanos, anterior a la actual, establecía, debía de acudirse a las normas del Código civil, por exigirlo el art. 16 [Art. 12, P.R.] de este cuerpo legal. Y dado que en Derecho civil común hay que admitir *la extinción de todo arrendamiento* por resolución de la propiedad o titularidad del arrendador, conforme a la regla clásica *resolutio iure concedentis, resolvitur ius concessum*, de ahí que a través de la aplicación supletoria del Derecho civil común cabía sostener que la ejecución hipotecaria de una finca dejaba sin efecto el arrendamiento de la misma otorgado después de constituida la correspondiente hipoteca. Consecuencia de este criterio era que el *arrendamiento otorgado por el usufructuario de una finca quedaba resuelto al extinguirse el usufructo del arrendador*, resultado que consagró reiterada jurisprudencia que aplicó el art. 480 [Art. 409, P.R.] del Código civil, cuya doctrina extendió al arrendamiento otorgado por el fiduciario cuando después se defería el fideicomiso al fideicomisario. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. 4, Vol. 2, pág. 1165.

Trasladando dicha doctrina a Puerto Rico, mantienen su vigencia el Art. 409 del Código Civil, 31 L.P.R.A. sec. 1520, en la prevención de que podrá el usufructuario

---

(²) Citas de Bonet Ramón, *Código Civil Comentado*, 2da ed., 1964, pág. 73.

(dueño) arrendar a otro la cosa usufructuada, pero todos los contratos que celebre como tal usufructuario *se resolverán al fin del usufructo*; y el concordante efecto del Art. 1461 (31 L.P.R.A. sec. 4068) que da acceso al comprador a la finca arrendada, por terminación del arriendo vigente al verificarse la venta.

■ A pesar de que el estado de derecho en Puerto Rico conllevaría la resolución de toda clase de arrendamientos, nos inclinamos a limitar dicho efecto a los concertados con posterioridad a la constitución del crédito hipotecario que provoca la ejecución. Moro Ledesma sostiene que en materia de arrendamientos urbanos el derecho del arrendatario debe resolverse si es posterior a la hipoteca que haya determinado en la ejecución forzosa la adquisición de la propiedad de la finca hipotecada.[3] En Puerto Rico la legislación especial de alquileres razonables no enerva la acción propia de la regla de prelación hipotecaria, la cual en su efectividad ejecutiva provoca la purga, eliminación, liberación o extinción de todos los derechos reales, gravámenes o anotaciones *posteriores*. Hemos de concluir que en Puerto Rico el impacto de la legislación especial sobre la autonomía de los contratantes en el otorgamiento de un crédito hipotecario se limita a la subsistencia de contratos de inquilinato con renta regulada, otorgados con anterioridad a la constitución de la hipoteca. Se ajusta más este criterio ecléctico a nuestro sistema de Derecho civil orientado por una vigorosa presencia de derechos constitucionales. El acreedor hipotecario, los bancos, financieras y demás proveedores de crédito tienen facilidad para informarse si el inmueble ofrecido en garantía está ocupado en parte o totalmente por inquilinos, y si constante la relación arrendaticia controlada por DACO extendieren el préstamo, deben aceptar las consecuencias del gravamen en términos de la protección que a aquéllos brinda la Ley de Alquileres. De otra parte, el inquilino que informado

[3] 9 *Anuario de Derecho civil* 1325 (1956).

por el Registro de la Propiedad de la existencia previa de una hipoteca, conviene el arrendamiento de la vivienda o local de negocio, se atiene por propia voluntad a la posibilidad de resolución del contrato, llegado el caso de ejecución o extinción de propiedad o titularidad en su arrendador.

El método más confiable para proteger la integridad del ejecutivo sumario o la acción civil de vía ordinaria es incluir los inquilinos como parte demandada desde un principio, mas si no lo fueren, deberá notificárseles con copia del mandamiento de ejecución o auto de posesión, con plazo razonable para intervenir y oponerse a la resolución del arrendamiento e invocar la prórroga involuntaria dispuesta en los Arts. 12 y 15 de la Ley, 17 L.P.R.A. secs. 192 y 205, o para desalojar y rendir su posesión al adjudicatario en subasta. La ejecución de vía ordinaria, como la efectuada en este caso, se rige, no por el Art. 230 de la Ley Hipotecaria, (4) 30 L.P.R.A. sec. 2730, sino por la Regla 51.3 de Procedimiento Civil, que específicamente salva los derechos de terceros que no hayan intervenido en el procedimiento —y los arrendatarios que anteceden la hipoteca son propiamente terceros— según el texto que transcribimos:

> . . . Cuando una orden o sentencia dispusiere el traspaso de la posesión, la parte a cuyo favor se registre tendrá derecho a un mandamiento de ejecución previa solicitud al secretario. En todos los casos en que el tribunal ordenare una venta judicial de bienes muebles o inmuebles, dicha orden tendrá la fuerza y efecto de un auto disponiendo la entrega física de la posesión, debiendo consignarse así en el fallo u orden para que el alguacil u otro funcionario actuante proceda a poner al comprador en posesión de la propiedad vendida en el plazo de veinte (20) días desde el de la venta o subasta, sin perjuicio de los derechos de terceros que no hayan intervenido en el procedimiento.

---

(4) Así ordenado en el Art. 210 de la Ley Hipotecaria, párr. 2 (30 L.P.R.A. sec. 2701).

Si nuestra ley permitiera la subsistencia del arrendamiento urbano concertado *con posterioridad* a la constitución de hipoteca sobre el inmueble arrendado, el deudor inescrupuloso podría frustrar la ejecución y toma de posesión por el comprador en subasta con simplemente dar el inmueble en arrendamiento por canon irrisorio dentro de los límites de $200 y $400 por mes que auspician la prórroga obligatoria y remitiendo al acreedor o comprador en subasta a la tolerancia de arrendamientos ruinosos, pues no tiene a su alcance el remedio provisto por la causa 12 del Art. 114 de la Ley española, *ante*, de acción resolutoria del arriendo, fundada en que las condiciones pactadas para el arrendamiento por el usufructuario (dueño) anterior fueron *notoriamente gravosas* para la propiedad.

La moción de intervención del arrendatario aquí recurrente, y que le fuera denegada por la sala de instancia, omite la fecha de comienzo de la relación arrendaticia que por lo afirmado en su petición de *certiorari* puede fijarse en año y medio después de constitución de la hipoteca. El recurrente resulta ser, por tanto, un inquilino post hipoteca en posesión precaria pues su contrato no subsistió la acción ejecutiva, extinguido el título de su arrendador; sin más derecho que un término adecuado para desalojar el apartamiento y dejarlo a la libre disposición de la recurrida.

Con estos antecedentes y fundamentos *se anulará el auto por indebidamente expedido, y la resolución recurrida quedará confirmada.*

El Juez Asociado Señor Torres Rigual concurre en el resultado sin opinión. El Juez Asociado Señor Negrón García se inhibió.