ATANACIA CORPORATION, demandante y recurrente, *v.* JORGE M. SALDAÑA, INC. y OTROS, demandados y recurridos; TORRE DE SAN MIGUEL Y ASOCIADOS, S.E., interventora y recurrida.

*Número:* RE-90-680 *Resuelto:* 6 de mayo de 1993

*Alberto J. Picó González*, de *Brown, Newson & Córdova*, abogado de la recurrente; *Carmen M. Pagán Ortiz y Carlos G. Látimer*, de *Látimer, Biaggi, Rachid & Godreau*, abogados de los interventores y recurridos; *Milton J. Rúa y Alvaro R. Calderón Jr.*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

¿Cuál es el término para instar las acciones de nulidad del trámite de ejecución de hipoteca y venta judicial efectuadas por la vía ordinaria? ¿A partir de qué fecha comienza a correr dicho término? ¿Cuál es la naturaleza y el carácter del mismo? Esas son las controversias que suscita el recurso ante nos.

En un procedimiento de ejecución de hipoteca por la vía ordinaria el foro de instancia *dictó una sentencia sumaria* a favor de Torre de San Miguel y Asociados, S.E., interventora y recurrida, al estimar que, por analogía, el término aplicable era el de caducidad de tres (3) años dispuesto en la Ley Hipotecaria y del Registro de la Propiedad para solicitar la nulidad del ejecutivo sumario. Cometió error de derecho al decidir así.

Las razones que nos mueven a este dictamen son las siguientes: (1) el procedimiento ordinario de ejecución de hipoteca es uno en el que la intervención del tribunal es más limitada que en el sumario, el cual es técnico y en éste la participación del tribunal es incisiva para garantizar que se cumplan con todos los requisitos dispuestos por ley; (2) la acción de nulidad de la ejecución de la sentencia de un proceso suscitado por la vía ordinaria no tiene término prescriptivo, salvo las excepciones señaladas aquí, y (3) la nueva Ley Hipotecaria y del Registro de la Propiedad de 1979, taxativamente no hace extensivo el término de tres (3) años al procedimiento ordinario.

I

*Los hechos*

En 1981, Jorge M. Saldaña, Inc. (en adelante Saldaña) presentó una acción de ejecución de hipoteca, *por la vía ordinaria*, y cobro de dinero contra Atanacia Corp. (en adelante Atanacia).[1] Atanacia se allanó a que se dictara sentencia sumaria en su contra. El 15 de junio de 1982, el foro de instancia dictó una sentencia sumaria contra Atanacia en la que la condenó a pagar cuarenta y dos mil setecientos dólares ($42,700) del principal adeudado, más los intereses vencidos, y ordenó que Saldaña vendiera en pública subasta la propiedad de Atanacia que garantizaba la deuda.

*El 23 de septiembre de 1982*, Saldaña se adjudicó la buena pro en la subasta de la propiedad de Atanacia que garantizaba la deuda. Ese mismo día se otorgó la escritura de venta judicial.

*El 5 de abril de 1988*, más de *cinco (5) años* después de efectuada la adjudicación de la propiedad, Atanacia presentó una demanda contra Saldaña sobre nulidad de subasta y cancelación de asiento de inscripción.

Atanacia solicitó que se decretara la nulidad de la subasta por Saldaña haber incumplido con los requisitos de la Ley Hipotecaria y del Registro de la Propiedad de 1979 y con la Regla 51.8 de Procedimiento Civil, 32 L.P.R.A. Ap. III, sobre notificación de la subasta,[2] pues no citó a la subasta a Atanacia a través de sus abogados que habían comparecido al pleito, en violación al Art. 145 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2469). Saldaña privó así a Atanacia de comparecer a la subasta, lo que permitió que el demandado se adjudicara los bienes únicamente por el monto del crédito. Además, el edicto de la subasta no se publicó en los dos (2)

---

[1] Pleito Civil Núm. 81-2394 ante el Tribunal Superior, Sala de Bayamón.

[2] Pleito Civil Núm. 88-1594(505) ante el Tribunal Superior, Sala de Bayamón.

lugares públicos más cercanos al lugar donde ubica la oficina de Atanacia. Tampoco se publicó en los dos (2) sitios públicos más cercanos a la residencia del agente residente de Atanacia (Demanda y Sentencia de 6 de febrero de 1990, Hon. Rafael A. Contreras Estelritz, Juez).

Tras el cumplimiento con los trámites de rigor, el foro de instancia dictó el 6 de febrero de 1990 una sentencia sumaria parcial en la cual se *decretó la nulidad de la subasta y venta judicial en la que Saldaña se adjudicó la propiedad* y ordenó la celebración de una nueva subasta. Su razón de decidir se fundamentó en el incumplimiento de Saldaña con los requisitos legales de publicación de avisos y notificación de la subasta.

El 9 de marzo de 1990, Torre de San Miguel y Asociados, S.E. (en adelante San Miguel) presentó una demanda de intervención en el pleito. Adujo que el *7 de abril de 1988* había adquirido por compra a los hermanos Saldaña la propiedad subastada y había presentado la correspondiente escritura pública de compraventa al Registro de la Propiedad el 2 de mayo de 1988. Sostuvo que era parte indispensable en el pleito y tercero registral con mejor derecho que Atanacia.

El 18 de junio de 1990, el foro de instancia dictó sentencia en la cual, luego de admitir la intervención de San Miguel, dejó sin efecto la sentencia sumaria parcial de 6 de febrero de 1990 y el decreto de nulidad de la subasta.(³)

Así las cosas, San Miguel solicitó al foro de instancia que dictara sentencia sumaria a su favor. Su razón de pedir se fundamentó en la alegada caducidad de la acción de nulidad de subasta instada por Atanacia. En ausencia de un término expresado en la ley para instar la acción de

---

(³) De dicha sentencia, Atanacia Corp. acudió ante este Foro vía *certiorari* (CE-90-516), cuya expedición fue denegada. De igual manera denegamos su moción de reconsideración por entender que, en aras de la economía procesal, San Miguel y Asociados, S.E. debía permanecer en el pleito.

nulidad de ejecuciones de hipoteca tramitados por la vía ordinaria, San Miguel sostuvo que le era aplicable, por analogía, el término de caducidad de tres (3) años provisto por el Art. 233 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2733, para instar dicha acción en casos de ejecución de hipoteca por la vía sumaria.

A dicha solicitud de sentencia sumaria se opuso Atanacia. Sin controvertir los hechos alegados por San Miguel en su solicitud, Atanacia sostuvo que su acción, por no tener un término dispuesto en ley y por tratarse de la nulidad de un acto, no prescribía ya que "l[a] prescrip[ción] no corre contra lo inexistente". Solicitud de revisión, pág. 5. Sostuvo, además, que cualquier intento de los tribunales de aplicar un término en este tipo de acciones, utilizando como analogía el término dispuesto en la ley hipotecaria para el ejecutivo sumario, era un acto de legislación judicial impermisible.

El 5 de noviembre de 1990, el foro de instancia dictó una sentencia sumaria mediante la cual desestimó la demanda de Atanacia. Como cuestión de derecho, la sala sentenciadora concluyó que en casos como el de autos debía aplicarse, por analogía, el término de caducidad de tres (3) años desde que se otorga la escritura de venta judicial para instar la acción de nulidad. A tenor con esa conclusión de derecho, determinó que la acción presentada por Atanacia cinco (5) años después de haberse realizado la venta judicial había caducado.

Atanacia acude, ante nos, inconforme con tal dictamen y le imputa al foro sentenciador haber errado al determinar "que las acciones sobre nulidad de ejecuciones de hipoteca realizadas por la vía ordinaria tienen un período de caducidad de tres [(3)] años a partir de la fecha en que se otorgare la escritura de venta". Solicitud de revisión, pág. 4.

Decidimos revisar. Las partes han comparecido. Resolvemos.

## II

*La naturaleza de los procedimientos de ejecución de hipoteca*

■ Actualmente, nuestro ordenamiento jurídico le brinda al acreedor hipotecario tres (3) vías procesales distintas para hacer efectivo su crédito y ejecutar su garantía real. Uno es el procedimiento de ejecución de hipoteca por la vía ordinaria (30 L.P.R.A. sec. 2701; Regla 51.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III; R.F. Morales Cabranes, *La ejecución de hipoteca en Puerto Rico*, 43 Rev. C. Abo. P.R. 205 (1982)); otro es el procedimiento ejecutivo sumario (30 L.P.R.A. sec. 2701 *et seq.*; H. Brau del Toro, *Apuntes para un curso sobre el estado del derecho inmobiliario registral puertorriqueño bajo la Ley Hipotecaria de 1873*, 48 Rev. Jur. U.P.R. 113, 473–486 (1979)), y además, puede instar la acción ordinaria de cobro de dinero, con embargo de la finca si lo desea, en aseguramiento de sentencia (Regla 51 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *P.R. Prod. Credit Assoc. v. Registrador*, 123 D.P.R. 231 (1989); *C.R.U.V. v. Torres Pérez*, 111 D.P.R. 698 (1981)).

### A. *Procedimiento por la vía ordinaria*

■ La vía judicial ordinaria para el cobro de créditos hipotecarios es de naturaleza mixta, es decir, contiene elementos de la acción real y la personal. *P.R. Prod. Credit Assoc. v. Registrador*, supra. La acción se rige por las Reglas de Procedimiento Civil, Regla 51.3 *et seq.*, 30 L.P.R.A. Ap. III, y por ciertas disposiciones de la Ley Hipotecaria y del Registro de la Propiedad de 1979, que también regulan el procedimiento sumario. *Cf.* Reglas 51.3 y 51.8 de Procedimiento Civil, *supra*; Art. 201 de la Ley Hipotecaria y del

Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2701).[4] Brau del Toro, *supra*, pág. 473.

De suerte que en este proceso aplicarán los términos de las distintas etapas del proceso ordinario, muchas veces extensos, dispuestos en las Reglas de Procedimiento Civil.

En el proceso de ejecución por la vía ordinaria hay una fase previa contenciosa a la cual le sigue otra eminentemente ejecutiva (proceso de ejecución). La primera va dirigida a la segunda. Véase R. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 2, pág. 1048.

En términos generales, el proceso ordinario se inicia con la presentación de una *demanda* ante el tribunal competente y el emplazamiento del titular registral del bien o del derecho hipotecado o sus causahabientes. Véanse: 30 L.P.R.A. secs. 2702 y 2707V–VI; Regla 4 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *C.R.U.V. v. Torres Pérez*, supra; *Ramírez v. Registrador*, 116 D.P.R. 541 (1985); *Housing Inv. Corp. v. Registrador*, 110 D.P.R. 490 (1980); *Talcott Inter-Amer. Corp. v. Registrador*, 104 D.P.R. 254 (1975); *Mundo v. Fúster*, 87 D.P.R. 363 (1963). Generalmente, con dicha demanda se presenta de forma simultánea una solicitud de anotación preventiva de demanda. Regla 56.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Art. 115.5 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-115.5, edición especial.

Emplazados los interesados, el pleito continúa el curso ordinario. Celebrado el juicio y notificada la sentencia, el foro sentenciador dicta una orden de ejecución de sentencia a solicitud del acreedor ejecutante, para que el alguacil del distrito —donde los bienes radiquen— proceda

---

[4] Además, aplican a este procedimiento los Arts. 249 y 252 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 1130 y 1133, que aún están vigentes.

con los trámites para la celebración de la subasta con la debida notificación a los interesados. 30 L.P.R.A. secs. 2720 y 2724. *Cf.* 30 L.P.R.A. sec. 2473; Regla 51.8(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Caguas Federal v. Martínez*, 112 D.P.R. 851 (1982); *Housing Investment Corp. v. Luna*, 112 D.P.R. 173 (1982).

De particular importancia a la controversia ante nos resulta la limitada intervención judicial en el proceso post sentencia de la subasta, venta y adjudicación de los bienes para hacer efectivo el crédito bajo el procedimiento ordinario. Salvo contadas excepciones,[5] el foro judicial deja en manos del alguacil del tribunal y del acreedor ejecutante el proceso post sentencia de subasta, venta y adjudicación de los bienes ejecutados para satisfacer el crédito. Véase Regla 51.8(b), (c) y (d) de Procedimiento Civil, 32 L.P.R.A. Ap. III. De hecho, hemos resuelto que la escritura pública de venta judicial, en la que el alguacil del tribunal interviene en representación de uno de los otorgantes, no se considera un documento expedido por autoridad judicial. *C.R.U.V. v. Registrador*, 117 D.P.R. 662, 667 (1986).

En la etapa post sentencia del procedimiento ordinario de ejecución de hipoteca, las garantías que brinda la intervención judicial a las partes se minimizan de forma apreciable si lo comparamos, como veremos, con el ejecutivo sumario.

---

[5] Estas excepciones, inaplicables al caso de autos, ocurren, entre otras, cuando el acreedor ejecutante desea eliminar del Registro de la Propiedad los asientos posteriores al crédito ejecutado, 30 L.P.R.A. sec. 2731; *Empire Life Ins. Co. v. Registrador*, 105 D.P.R. 136 (1976); cuando el foro judicial interviene para garantizar el cumplimiento de las disposiciones sobre hogar seguro, 30 L.P.R.A. sec. 2732 y 32 L.P.R.A. sec. 1130, y para ordenar la administración interina de los bienes hipotecados en los casos en que dicha medida sea apropiada, 30 L.P.R.A. sec. 2734, y para un acreedor posterior obtener una orden que le permita utilizar el monto de su crédito en la subasta, 30 L.P.R.A. sec. 2711.

## B. *El procedimiento por la vía sumaria*

█ El objetivo principal del ejecutivo sumario es la "ejecución realizadora del valor dinerario del bien hipotecado". Roca Sastre, *op. cit.*, pág. 1034. Véase, además, L. Muñoz Morales, *Lecciones de Derecho Hipotecario*, Río Piedras, Ed. U.P.R., 1946, T. II, págs. 192–193; Roca Sastre, *op. cit.*, pág. 1102 y ss.

█ Por su naturaleza, el ejecutivo sumario es el "puro proceso de ejercicio de la acción hipotecaria". *P.R. Prod. Credit Assoc. v. Registrador*, supra, pág. 243. Véase R. Martínez Álvarez, *Naturaleza Jurídica del Ejecutivo Hipotecario*, 4 Rev. Der. Leg. Jur. Abo. P.R. 25 (1939). A través de éste se ejercita la acción real hipotecaria directamente contra los bienes hipotecados, sin acción personal envuelta y sin fase previa de discusión o contención relativa al crédito. Roca Sostre, *op. cit.*, pág. 1104. De ahí que no haya cabida en este proceso para la acumulación de la acción personal. *P.R. Prod. Credit Assoc. v. Registrador*, supra.

█ En síntesis, el ejecutivo sumario es un procedimiento expedito para hacer efectivo el valor dinerario del bien exclusivamente hipotecado, en cobro del crédito evidenciado en un documento público debidamente inscrito. Como medio para facilitar ese cobro, se obvia la fase contenciosa del proceso y se solicita una orden concreta para así ejecutar ese bien. Debido a ello, de ordinario, una vez iniciado el proceso sigue su curso ininterrumpido hasta la venta de la propiedad en subasta pública. La interrupción o suspensión del proceso es la excepción en este procedimiento. 30 L.P.R.A. sec. 2733.

En atención a su naturaleza expedita y sumaria, la ley impone unos requisitos de estricto cumplimiento para validar el proceso. Véanse: *Martorell v. Crédito y Ahorro Ponceño*, 42 D.P.R. 655 (1931); Brau del Toro, *supra*, pág. 473; Muñoz Morales, *op. cit.*, pág. 256. Entre otros, como garantía a los derechos de las partes afectadas por la ejecución,

la ley provee para la continua supervisión judicial en todas las etapas del procedimiento. Veamos.

■ El ejecutivo sumario, por su naturaleza especial, está específicamente regulado por los Arts. 201–235 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. secs. 2701 a 2735) y por los Arts. 181.1–192.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2003-181.1 a 2003-192.1, edición especial). Éste se inicia con un *requerimiento de pago extrajudicial* al deudor de la cantidad adeudada y no con una demanda. 30 L.P.R.A. sec. 2703.[6] Hecho lo anterior, el deudor, o tercer poseedor puede consignar el pago judicialmente. Si el acreedor queda satisfecho con la consignación, otorgará la correspondiente escritura de cancelación del crédito hipotecario. También el tribunal, de entender bien hecha la consignación y en ausencia de oposición del acreedor, puede declarar extinguida la obligación principal garantizada y ordenar la cancelación total o parcial de la garantía hipotecaria en el Registro de la Propiedad. 30 L.P.R.A. sec. 2705.

■ De no realizarse la consignación en el plazo dispuesto por la ley, o de no estar conforme con ésta, el acreedor hipotecario puede iniciar el procedimiento judicial mediante un escrito inicial ante el Tribunal Superior competente. 30 L.P.R.A. secs. 2706 y 2707. Iniciado el proceso, la participación judicial es activa durante todas sus etapas. Véase 30 L.P.R.A. secs. 2710–2720.

El foro judicial es quien fija los términos y las condiciones para la subasta (30 L.P.R.A. sec. 2721), además de las reglas que fija la ley (30 L.P.R.A. secs. 2722 y 2723).

Como si fuera poco, durante los procedimientos posteriores al remate, el foro judicial, contrario al procedimiento

---

(6) En general, sobre las distintas fases del procedimiento sumario, véase H. Brau del Toro, *Apuntes para un curso sobre el estado del derecho inmobiliario registral puertorriqueño bajo la Ley Hipotecaria de 1873*, 48 Rev. Jur. U.P.R. 113, 470–488 (1979).

ordinario, juega un papel crucial al cerciorarce si durante todo el trámite se han cumplido los requisitos de ley, y al confirmar o denegar la venta. Véase el Art. 225 (30 L.P.R.A. sec. 2725). Tal requisito de *confirmación* es inaplicable al procedimiento ordinario de ejecución de hipoteca. 30 L.P.R.A. sec. 2701 y sec. 2003-190.6, edición especial.

En síntesis, de una lectura del Cap. 121 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2701 *et seq.*) y del Título XI del Reglamento se desprende que el procedimiento sumario de ejecución de hipoteca es sumamente técnico y detallado. Por su carácter sumario (que sólo se suspende en contadas excepciones y que aquí son inaplicables), éste permite un curso ininterrumpido hasta la venta en subasta pública de la propiedad hipotecada. Por esa razón, tienen que cumplirse estrictamente cada uno de los requisitos del proceso, ya que éstos sirven de medida de protección al debido proceso de ley del cual es beneficiario el deudor y las demás partes interesadas.

La intervención judicial en el procedimiento sumario es incisiva y abarcadora. Ello le garantiza al deudor y a los demás interesados que no se les privará de la propiedad o derecho sin que se siga al pie de la letra el proceso debido antes y después de dictar sentencia en ejecución de la hipoteca.

Dada la naturaleza y el funcionamiento del proceso ejecutivo sumario, no es de extrañar que la ley hipotecaria establezca un término, relativamente corto y de caducidad, para el ejercicio de cualquier acción de impugnación de la subasta y venta judicial bajo dicho proceso.

Una intervención judicial amplia, incisiva y determinante, en todas las etapas del proceso sumario, le imprime garantías suficientes que salvaguardan los derechos de los afectados por éste, de suerte que se minimizan las causas que puedan viciar de nulidad el proceso.

■ El procedimiento ejecutivo sumario está en desuso en Puerto Rico, pues precisamente por su cumplimiento estricto es riesgoso para el demandante que no cumpla con sus requisitos. Por ello, la práctica generalizada es la de utilizar el procedimiento ejecutivo ordinario.

Vista la naturaleza de ambos procedimientos, claramente no se justifica aplicar un término igual en ambos para la impugnación de la subasta y venta judicial.

El adquirente de la propiedad no ha tenido en el proceso ordinario las garantías que el proceso sumario le brinda al que allí adquiere para que el foro judicial supervise, vigile y se cerciore del estricto y minucioso cumplimiento de todos los detalles y requisitos del proceso, de manera que se le asegure con mayor certeza que su título es válido e inatacable. La limitada participación judicial en la etapa post sentencia del proceso ordinario no justifica la limitación del término para impugnar la subasta y venta judicial que se impone en el ejecutivo sumario.

Tales consideraciones, y no una mera inadvertencia, propiciaron que el legislador dispusiera un término de caducidad de tres (3) años para el ejecutivo sumario y nada dispusiera al respecto en el caso del procedimiento ordinario.([7])

## III

*Los términos para instar la acción de nulidad antes de 1979*

■ La Ley Hipotecaria de 1893, vigente en Puerto Rico hasta su derogación por la actual Ley Hipotecaria y del Registro de la Propiedad de 1979, Ley Núm. 198 de 8 de agosto de 1979 (30 L.P.R.A. sec. 2001 *et seq.*), *no disponía* término alguno para instar la acción ordinaria de nu-

---

([7]) A los fines de resolver la controversia que tenemos ante nos es innecesario discutir la naturaleza de la acción ordinaria de cobro de dinero, con embargo de la finca en aseguramiento de sentencia.

lidad del ejecutivo sumario. *Cf.* Arts. 128 a 133 de la Ley Hipotecaria de 1893, según enmendada, 30 L.P.R.A. secs. 224 a 229, y los Arts. 168 a 176 de su reglamento, 30 L.P.R.A. secs. 1089 a 1097. El Código de Enjuiciamiento Civil, entonces vigente, *tampoco disponía* un término específico para instar dicha acción de nulidad de la sentencia de ejecución dictada en el procedimiento ordinario de ejecución de hipoteca. *Cf.* Arts. 239 a 268 del Código de Enjuiciamiento Civil derogado, 32 L.P.R.A. secs. 1121–1149.

Con la aprobación de las Reglas de Procedimiento Civil de 1958, la Regla 49.2 (32 L.P.R.A. Ap. III) vino a regular las acciones ordinarias e indepedientes para cuestionar la validez de las sentencias dictadas en todo tipo de pleito. Esta regla establecía un término de seis (6) meses para instar la acción de nulidad. No obstante, este Foro resolvió que ese no es un término de prescripción ni de caducidad que impida el ejercicio de la acción de nulidad del ejecutivo hipotecario ordinario cuando se alega una causal de *nulidad absoluta* de la sentencia. Véanse: *Calderón Molina v. Federal Land Bank*, 89 D.P.R. 704 (1963); B. Ortiz, *Nulidad del Procedimiento Ejecutivo*, 3 Rev. Der. Leg. Jur. C. Abo. P.R. 360 (1938).

Sin embargo, es sabido que la acción reivindicatoria de bienes inmuebles es imprescriptible, esto es, no prescribe en tanto el poseedor no haya completado los requisitos necesarios para usucapir, a saber, treinta (30) años. Art. 1863 del Código Civil, 31 L.P.R.A. sec. 5293. Por ello, aunque teóricamente la acción de nulidad no prescribía nunca, en términos reales tenía un término de prescripción de treinta (30) años, que es el término de la acción reinvindicatoria con mala fe y sin justo título. Ello así, pues quien poseyera físicamente la finca podía adquirir el dominio por usucapión extraordinaria, Art. 1859 del Código Civil, 31 L.P.R.A. sec. 5280, y en tal caso el deudor demandante no podría prevalecer sobre dicho poseedor.

■ Debe destacarse, sin embargo, que la protección que brinda el Art. 105 (30 L.P.R.A. sec. 2355) a un tercero de buena fe y a título oneroso sobre el dominio o cualquier derecho real que implique posesión queda amparado por la fe pública registral frente a un usucapiente, bien sea por prescripción ordinaria o extraordinaria, si desconocía la usucapión consumada o en curso *a favor de una persona distinta de su transmitante, y si dentro de un (1) año luego de la adquisición interpone acción judicial adecuada* para negar los efectos de la usucapión consumada antes de la adquisición o dentro de este plazo. Transcurrido dicho término, cesará la protección concedida para el tercero y se juzgará el título y contará el tiempo con arreglo a la legislación civil. Art. 107 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2357).

Habíamos resuelto, además, que cuando la propiedad ejecutada pasaba a manos de un tercero hipotecario de buena fe, protegido por la ley, el deudor o tercer poseedor podía ejercitar una acción de daños y perjuicios contractuales contra el acreedor ejecutante basada en la nulidad del procedimiento sumario. Las bases legales para dicha acción eran el Art. 169 del Reglamento Hipotecario derogado, 30 L.P.R.A. sec. 1090, y el Art. 38 de la vieja Ley Hipotecaria de 1893 (30 L.P.R.A. ant. sec. 63). A dicha acción subsidiaria de daños y perjuicios le habíamos aplicado el término prescriptivo de quince (15) años dispuesto en el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294, contados a partir de la adjudicación de la subasta, por considerarla como personal *ex contractu. Ríos v. Banco Popular*, 81 D.P.R. 378 (1959). Véanse, además: *Provanetti Doumont v. Martínez*, 99 D.P.R. 663 (1971); *Buil v. Banco Popular*, 69 D.P.R. 254, 266 (1948); *F. Rodríguez y Hnos & Co. v. Aboy*, 66 D.P.R. 525 (1946); *Carmona et al. v. Cuesta*, 20 D.P.R. 229 (1914).

■ Por otro lado, este Foro había interpretado que —frente al acreedor ejecutante— la acción de nulidad de la

sentencia, en ejecución de hipoteca y venta judicial trami-
tada por la vía *ordinaria, no tenía término prescriptivo.*
Como fundamento de esta norma, esbozamos que, tratán-
dose de un supuesto de sentencia nula por *defectos sustan-
ciales* en el procedimiento, le aplicaba igual norma general
que al ejecutivo sumario. Esto es, la acción contra el acree-
dor ejecutante encaminada a establecer la nulidad abso-
luta de un procedimiento ordinario de ejecución de hipo-
teca no prescribía nunca, pues la prescripción no corre
contra lo que es nulo e inexistente, *salvo en los casos de las
excepciones ya señaladas en el procedimiento ejecutivo su-
mario, sobre si hubo usucapión extraordinaria o si el ad-
quirente del bien era un tercero registral.* Véanse: *Sánchez
Rodríguez v. López Jiménez,* 116 D.P.R. 172 (1985); *Figue-
roa v. Banco de San Juan,* 108 D.P.R. 680 (1979); *Sucn.
Trías v. Porto Rico Leaf Tobacco Co.,* 50 D.P.R. 91 (1936).

## IV

*Los términos para presentar la acción de nulidad luego de
1979*

Con la aprobación de la nueva Ley Hipotecaria y del
Registro de la Propiedad en 1979, el término para instar la
acción independiente de nulidad del ejecutivo sumario su-
frió cambios sustanciales.

La Asamblea Legislativa aprobó el Art. 233 de la nueva
Ley Hipotecaria y del Registro de la Propiedad de 1979 (30
L.P.R.A. sec. 2733). Allí el legislador dispuso que:

> *Todas las demás reclamaciones, principales o subsidiarias,*
> que con motivo de procedimientos sumarios hipotecarios inicia-
> dos en o con posterioridad a la fecha en que entre en vigor esta
> ley puedan formular, tanto el deudor como los terceros posee-
> dores y los demás interesados, incluso las que versaren sobre
> fraude o nulidad de las actuaciones realizadas *después de los
> primeros veinte 20 días del requerimiento judicial de pago,* se
> ventilarán en el juicio ordinario que corresponda, sin producir
> nunca el efecto de suspender ni entorpecer el procedimiento

judicial sumario; *pero tales reclamaciones caducarán necesaria-*
*mente a los tres 3 años de la fecha en que se otorgare la escritura*
*de venta o adjudicación y quedarán sujetas a lo establecido en*
*la sec. 2355 de este título en lo que respecta a terceros adquie-*
*rentes si del Registro no constan claramente los motivos o cau-*
*sas de la acción ejercitada.* La competencia para conocer de este
juicio ordinario se determinará por las reglas que rigen el
mismo. (Énfasis suplido.) 30 L.P.R.A. sec. 2733.

Como se notará, la introducción de este artículo trajo
cambios drásticos y sustanciales al derecho —hasta enton-
ces vigente— sobre la extensión del término y su natura-
leza, para instar la acción de nulidad del ejecutivo sumario
ya fuera en reclamación de la reivindicación del bien hipo-
tecado (reclamación principal) o de los daños y perjuicios
ocasionados por el acreedor ejecutante (reclamación
subsidiaria). *Por disposición expresa,* la Asamblea Legisla-
tiva, en clara protección de los intereses del acreedor eje-
cutante y del tercero registral, agrupó bajo un solo artículo
toda disposición de la vieja ley que regulaba las acciones
que tenía el deudor ante un ejecutivo sumario nulo (Art. 38
de la vieja ley y Art. 169 de su reglamento), así como la
regulación que, por interpretación judicial, habíamos reco-
nocido en este tipo de situaciones (reivindicatoria por nuli-
dad del procedimiento), *Sucn. Ramírez v. Tribl. Superior,*
81 D.P.R. 357 (1959). *Más aún, dispuso un término especí-*
*fico de tres (3) años para el ejercicio de todas las acciones,*
*cuando reiteradamente habíamos dispuesto que la acción*
*principal no tenía término prescriptivo alguno, Sucn. Trías*
*v. Porto Rico Leaf Tobacco Co.,* supra, y la subsidiaria tenía
*un término prescriptivo de quince (15) años, Ríos v. Banco*
*Popular,* supra. Para puntualizar los intereses protegidos,
cambió la naturaleza de los términos, hasta entonces vi-
gentes, de unos de carácter prescriptivo a unos de
caducidad.[8]

---

[8] Sobre la naturaleza de la caducidad, véanse: *Calo Morales v. Cartagena* Calo,
129 D.P.R. 102 (1991); *Culebra Enterprises Corp. v. E.L.A.,* 127 D.P.R. 943 (1991);
*Cintrón v. E.L.A.,* 127 D.P.R. 582 (1990); *Almodóvar v. Méndez Román,* 125 D.P.R.
218 (1990).

Esos cambios tan drásticos en cuanto al término para instar la nulidad del ejecutivo sumario *no se hicieron extensivos al término que nuestra jurisprudencia había fijado para instar la acción de nulidad de la sentencia del trámite de ejecución seguido por la vía ordinaria.*

La Comisión de lo Jurídico Civil que redactó el proyecto de ley fue clara al establecer que la nueva Ley Hipotecaria y del Registro de la Propiedad no intervino con el procedimiento ejecutivo ordinario como estaba regulado bajo el estado de derecho anterior. Específicamente señaló:

> La Comisión que hizo el estudio lo juzga seguro y claro, y lo endosa *aconsejando que se quede intocado el procedimiento ejecutivo ordinario por esta ley (sic) y que todas las rectificaciones que deban hacerse, se hagan como reformas al Código de Enjuiciamiento Civil y no en la Ley Hipotecaria.*

Por otro lado, las Reglas de Procedimento Civil de 1979 y aquellas disposiciones del Código de Enjuiciamiento Civil que quedaron vigentes y que son aplicables en el proceso ordinario, *no sufrieron cambios significativos ni dispusieron expresamente un término para instar la nulidad* del trámite de ejecución de hipoteca seguido por la vía ordinaria. Tan es así, que la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, vigente quedó casi inalterada.

## V

*Las enmiendas introducidas a la Ley Hipotecaria en 1980*

Finalmente, las enmiendas introducidas a la Ley Hipotecaria y del Registro de la Propiedad de 1979, en virtud de la Ley Núm. 143 de 14 de junio de 1980 (30 L.P.R.A. sec. 2001 *et seq.*), claramente exceptúan la aplicación del término de caducidad de tres (3) años al procedimiento ejecutivo ordinario. El Art. 201 de dicha ley dispuso en su segundo párrafo que:

> También podrá utilizar el acreedor hipotecario, a su elección, la vía judicial ordinaria para el cobro de su crédito, en cuyo caso serán aplicables *únicamente* las siguientes secciones de este título: 2702, 2707 incisos V y VI, 2711, 2720 a 2724, 2726 excluyendo la frase relativa al requisito de confirmación, 2727 a 2729, 2731, 2732, 2734. (Énfasis suplido.) 30 L.P.R.A. sec. 2701.

Este párrafo de dicho artículo no estaba contenido en la Ley Núm. 198 de 1979 (30 L.P.R.A. sec. 2001 *et seq.*) tal como fue originalmente aprobada. Como sabemos, la Legislatura había propuesto la vigencia de la Ley Núm. 198, *supra*, por el término de un (1) año. Véase Art. 256 de dicha ley, 30 L.P.R.A. sec. 2822. Dentro de ese término se aprobó la referida Ley Núm. 143 para, entre otras cosas, aclarar ciertos conceptos de la Ley Núm. 198, *supra*.

Se notará en la enumeración de las secciones que regulan el procedimiento ejecutivo sumario, que por disposición expresa de ley *son las únicas aplicables al procedimiento ordinario, específicamente se excluyó la sec. 2733 (Art. 233), la cual es precisamente la que establece el término de caducidad de tres (3) años* para instar la acción de nulidad de aquel proceso.

La mención específica de esas disposiciones implica la exclusión de lo no expresado. Véanse: *Director Of. Inspección Notarías v. Colón*, 131 D.P.R. 102 (1992); *Salgado v. Comisión Hípica Insular*, 49 D.P.R. 464, 466–467 (1936); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, pág. 312. Por ello, no podemos extender la disposición sobre la caducidad del proceso sumario al proceso ordinario cuando el legislador específicamente la excluyó (*Cf. Asociación de Padres Capuchinos v. Corte*, 44 D.P.R. 973, 975–976 (1933), opinión disidente del Hon. Juez Adolph G. Wolf), menos aún ante la clara exclusión de la letra de la ley. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14; *Cruz Fontánez v. Registrador*, 126 D.P.R. 182 (1990), y los casos allí citados.

# VI

*Conclusión*

 Por todo lo anterior, concluimos que en cuanto a la acción ordinaria para pedir la nulidad de la sentencia dictada y demás trámites de ejecución de hipoteca, por la vía ordinaria, quedó vigente el estado de derecho anterior a 1979. Cuando el deudor o tercer poseedor solicite la nulidad del procedimiento de ejecución de hipoteca tramitado por la vía ordinaria, bajo los fundamentos que producen su *nulidad absoluta* (falta de jurisdicción sobre la persona o la materia, violación al debido proceso de ley) tal acción puede ser presentada "en cualquier época, sin sujeción a término prescriptivo" alguno; puesto que lo que es inexistente no puede tener efecto jurídico de clase alguna. *Cf. Calderón Molina v. Federal Land Bank*, supra, pág. 709.

Claro está, nuestros dictámenes anteriores continúan en vigor, en cuanto a que la acción de nulidad no puede prevalecer contra el que usucapió la propiedad por la vía extraordinaria y contra un tercero registral sujeto a lo dispuesto en el Art. 107 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*. De igual forma, persiste el término de quince (15) años a partir de la subasta para la acción en daños y perjuicios *ex contractu* del deudor o poseedor contra el acreedor ejecutante.

# VII

*Aplicación a los hechos del caso ante nos*

Apliquemos las normas antes expuestas a los hechos de este caso.

Aquí Atanacia instó la acción de nulidad de subasta a los cinco (5) años y siete (7) meses con posterioridad a la adjudicación de la buena pro de ésta al acreedor ejecutante Saldaña. El foro de instancia decretó la nulidad de la su-

basta en vista del incumplimiento del acreedor ejecutante con los requisitos legales de publicación de avisos y su notificación. San Miguel, alegado tercero registral, solicitó la intervención en dicho pleito. Adujo que, dos (2) días después de presentada la demanda de nulidad, adquirió la finca —objeto de controversia— de los hermanos Saldaña mediante compraventa y había inscrito su título en el Registro de la Propiedad. Permitida su intervención, solicitó una sentencia sumaria a su favor bajo el fundamento de que la acción de nulidad de Atanacia había caducado. Así lo decretó el foro sentenciador. Erró al decidir así.

La acción de Atanacia no había prescrito. El término de tres (3) años para la caducidad de la acción principal o la subsidiaria que nace con el decreto de nulidad del ejecutivo sumario no es aplicable al caso de autos. *Aquí se trata de una causa de acción por nulidad de subasta y adjudicación del bien hipotecado en el procedimiento ejecutivo ordinario.*

En el caso de autos, el incumplimiento de Saldaña con los requisitos legales sobre los avisos y la notificación de subasta produce la nulidad absoluta de ésta y de la adjudicación llevada a cabo. Tal acción puede ser presentada en cualquier momento sin sujeción a término prescriptivo alguno (*Calderón Molina v. Federal Land Bank*, supra) *salvo que San Miguel pruebe que es un tercero registral protegido por la Ley Hipotecaria.*

En el foro de instancia queda por adjudicar si San Miguel es o no un tercero registral. Esa cuestión debe dilucidarse en un juicio plenario. *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991); *Calderón Molina v. Federal Land Bank*, supra. Además, debe dilucidarse cuál será el remedio a concederse si queda demostrado que San Miguel es un tercero registral.

*Se dictará sentencia revocatoria y se devolverá el caso a dicho foro para los trámites correspondientes compatibles con lo aquí resuelto.*

El Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Dentón no intervinieron. El Juez Asociado Señor Negrón García se inhibió.