Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| ORIENTAL BANK<br>**Apelado**<br><br>v.<br><br>SAN SEBASTIÁN PROPERTIES, LLC/SONIA I. OCASIO ESPINO/CRIMSON DEVELOPMENT GROUP, INC.<br>**Apelantes** | KLAN202400020 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de San Sebastián<br><br>Civil. Núm. A2CI201800368<br><br>Sobre: Incumplimiento de Contrato, Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de febrero de 2024.

El 8 de enero de 2024, San Sebastián Properties, LLC, la Sra. Sonia Ocasio Espino (señora Ocasio Espino) y Crimson Development Group, Inc. (en conjunto, los apelantes) comparecieron ante nos mediante una *Apelación Civil* y solicitaron la revocación de una *Sentencia* que se dictó el 31 de octubre de 2023 y se notificó el 1 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Sebastián (TPI). Mediante el aludido dictamen, en lo pertinente, el TPI declaró Ha Lugar una moción de sentencia sumaria que instó Oriental Bank (Oriental o apelado) y declaró No Ha Lugar una moción de desestimación que presentaron los apelantes al amparo de la Regla 10.2(6) de Procedimiento Civil, 32 LPRA Ap. V., R.10.2. En consecuencia, condenó a los apelantes a pagarle a Oriental el monto de $1,422,285.86 por concepto del incumplimiento del pago del préstamo y puntualizó que, de no realizar el referido pago, se ejecutaría la hipoteca que gravaba la propiedad en controversia.

Número Identificador

SEN2024 _____

Por los fundamentos que expondremos a continuación, **confirmamos** la sentencia apelada.

I.

El 25 de mayo de 2018, Oriental instó una *Demanda* sobre incumplimiento de contrato, cobro de dinero y ejecución de hipoteca contra los apelantes.[1] Específicamente, alegó que San Sebastián Properties, LLC, representada por su presidenta, la señora Ocasio Espino, suscribió un contrato de *Préstamo a Plazos a Corporación* ante el Banco Bilbao Vizcaya Argentaria (BBVA) por la suma de un millón quinientos mil dólares ($1,500,00.00) con el propósito de comprar una propiedad inmueble y realizarle mejoras a esta.[2]

De otra parte, sostuvo que el 21 de septiembre de 2012, la señora Ocasio Espino suscribió a su nombre una *Carta de Garantía Ilimitada y Continua* mediante la cual garantizó el pago total del préstamo, el cumplimiento de las obligaciones surgidas de este y su liquidación incluyendo los intereses que generen. De igual manera, ese mismo día, Crimson Development Group, Inc., representada por su presidenta, la señora Ocasio Espino, suscribió otra *Carta de Garantía Ilimitada y Continua* la cual surtía los mismos efectos. A pesar de ello, alegó que los apelantes incurrieron en incumplimiento de su obligación aun habiéndose realizado las diligencias y gestiones necesarias para el cobro de la deuda. Afirmó que la deuda estaba vencida, líquida y exigible.

Por lo antes expuesto, Oriental solicitó que se declarara vencida la totalidad de la deuda hasta el 9 de abril de 2018, la cual ascendía a $1,375,275.50, de los cuales $1,318,692.29 correspondían al principal, $50,112.37 correspondían a intereses acumulados, a los cuales se les estaría añadiendo $219.79

---

[1] Véase, págs. 1-48 del apéndice del recurso.
[2] Cabe aclarar que, actualmente en el presente caso, los negocios jurídicos de BBVA le pertenecen a Oriental. Igualmente, conforme surge del expediente, la propiedad adquirida por los apelantes era la finca 20,715 conforme aparece en el Registro de la Propiedad de San Sebastián.

diariamente, y $6,447.84 a cargos por demora. Además, solicitó el pago por concepto de gastos, costas y honorarios de abogado. Asimismo, solicitó que, de no efectuarse el pago de la aludida deuda, el TPI debía ordenarle al Alguacil del Tribunal a vender en pública subasta la propiedad hipotecada y de no ser suficiente el producto de esa venta para satisfacer la deuda, que se ordenara la ejecución de la sentencia sobre cualesquiera otros bienes de los apelantes.

En respuesta, el 18 de septiembre de 2018, los apelantes presentaron una *Contestación de Demanda; Reconvención y Demanda Contra Terceros*.[3] En síntesis, negaron ciertas alegaciones y levantaron sus defensas afirmativas, entre las cuales, destacaron que en la presente controversia existía falta de acumular una parte indispensable. Plantearon que el motivo de ello respondía a que no se trajo al pleito a la Autoridad de Carreteras y Transportación (ACT o agencia), a la Junta de Supervisión Fiscal ni a la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF).

De igual manera, los apelantes presentaron una reconvención en la cual plantearon que BBVA incurrió en dolo al momento de suscribir el contrato en controversia. Adujeron que tanto el BBVA como Oriental mantuvieron un patrón de mal manejo del préstamo, los cuales consistieron en la aplicación incorrecta de pagos de intereses y principal, lo cual tuvo como consecuencia realizar abonos adicionales por parte de los apelantes. Igualmente, argumentaron que estos alegados actos dolosos le han ocasionado pérdidas cuantiosas de dinero. Por tales motivos, le solicitaron al TPI que decretara la nulidad de la obligación, el resarcimiento de daños y la nulidad de la garantía hipotecaria.

Finalmente, los apelantes presentaron una demanda contra tercero contra el Banco Santander de Puerto Rico y varios

---

[3] Íd., págs., 49-65.

demandados de nombre desconocido. Contra estos, instaron una causa de acción sobre incumplimiento de contrato, resarcimiento de daños, una reducción del precio proporcional a los vicios invocando la doctrina de *non rite adimpleti contractus* y saneamiento por evicción.

Por su parte, el 1 de octubre de 2018, Oriental presentó su *Contestación a Reconvención* en la cual negó las alegaciones esgrimidas por los apelantes y levantó sus defensas afirmativas.[4] Transcurrido un tiempo, el 20 de noviembre de 2018, Oriental presentó una *Moción de Sentencia Sumaria*.[5] Indicó que no existían hechos sustanciales en controversia, por lo cual procedía dictar la sentencia sumariamente y, en consecuencia, condenar a los apelantes al pago de la deuda reclamada en la *Demanda*. En tal sentido, presentó veinticinco (25) hechos que a su juicio no estaban en controversia, y a base de estos hechos, adujo que correspondía disponer el pleito por la vía sumaria. Por su lado, el 16 de enero de 2018, los apelantes presentaron una *Moción en Oposición Inicial a Solicitud de Sentencia Sumaria*.[6] Esbozaron que existían hechos materiales en controversia, los cuales ameritaban abrir el descubrimiento de prueba. A su vez, plantearon que, había falta de parte de indispensable toda vez no se trajo al pleito a la ACT.

Posteriormente, el 2 de septiembre de 2020, los apelantes presentaron una *Moción Solicitando Desestimación Conforme a la Regla 10.2 (6) de Procedimiento Civil*.[7] En esta, argumentaron que levantaron oportunamente la defensa afirmativa de dejar de acumular una parte indispensable en la contestación a la demanda. Por ello, expresaron que estaban solicitando la desestimación del pleito ya que existía una controversia no adjudicada relacionada a

---

[4] Íd., págs., 66-70.
[5] Íd., págs., 71-121.
[6] Íd., págs., 122-181.
[7] Íd., págs., 182-219.

un caso de expediente de dominio entre la ACT y los apelantes, en el cual se alegaba que el predio en controversia era el mismo que se pretendía ejecutar. Por consiguiente, los apelantes concluyeron que la ACT era una parte con interés en este caso y tenía que participar de los procedimientos. Esgrimieron que, al esto no hacerse, el caso debía desestimarse.

El 20 de mayo de 2021, el TPI emitió una *Resolución* en la cual ordenó la celebración de una vista evidenciaria solicitando la comparecencia de la ACT a los fines de determinar si tenían o no interés propietario sobre la propiedad en cuestión.[8] De igual manera, ese mismo día, el TPI emitió una *Resolución y Orden* en la cual declaró Ha Lugar una moción incoada por Banco Santander de Puerto Rico, la cual solicitaba la desestimación de la demanda contra tercero.[9]

Tras varios tramites procesales, el 16 de septiembre de 2021, la ACT presentó una *Moción en Cumplimiento de Orden*.[10] En esta, adujo que presentaba el referido escrito en cumplimiento de una *Orden* que el TPI había emitido el 14 de julio de 2022, en la cual se le solicitaba a la agencia informar si tenía interés sobre la propiedad objeto de ejecución en el presente caso. En ese sentido, explicó que era propietaria de la finca 15,931 y la propiedad que Oriental pretendía ejecutar era la finca 20,715. Sostuvo que, los apelantes habían utilizado parte de las parcelas pertenecientes a la ACT como área de estacionamiento y acceso a la propiedad en disputa. Indicó que, evidencia de ello eran las distintas gestiones que habían realizado los apelantes para aumentar su cabida registral, entre la cual destaca, una petición de expediente de dominio instada por estos contra la ACT.

---

[8] Íd., págs., 244-245.
[9] Íd., pág., 247.
[10] Íd., págs., 282-286.

Del mismo modo, la agencia informó que, conforme a la investigación que había realizado hasta entonces, la ACT no tenía interés en la finca 20,715. Señaló que ello era así, pese a que parte del espacio que utilizaban los apelantes le pertenecía a la agencia. En ese sentido, la ACT solicitó que, en su momento, cualquiera de las partes de epígrafe debía compensar a la agencia por la ocupación ilegal de sus terrenos. Además, solicitó que se le concediera un término adicional para completar su investigación y así dar por cumplida la orden del TPI.

El 5 de octubre de 2022, el TPI emitió una *Orden* en la cual dispuso que la ACT no tenía interés en la finca 20,715.[11] En desacuerdo, el 14 de noviembre de 2022, los apelantes presentaron una *Moción de Reconsideración de Orden de 5 de octubre de 2022* […].[12] Plantearon que la posición esbozada por la ACT era preliminar y que la agencia había solicitado un término adicional para completarla. Del mismo modo, añadieron que a los apelantes no se le brindó la oportunidad para ripostar la postura del ACT. Insistieron en que el pleito que tienen contra la ACT sobre expediente de dominio aún no se había resuelto y que dicha adjudicación era necesaria para atender la presente controversia. Señalaron que meramente validar esta postura de la ACT constituía en una pre-adjudicación del pleito de expediente de domino el cual aún estaba activo.

Posteriormente, el 13 de diciembre de 2022, la ACT presentó una segunda *Moción en Cumplimiento de Orden*.[13] En esencia, la agencia explicó que ya había completado la investigación. Alegó que se encontraba realizando los trámites para que varias parcelas que estaban en controversia constaran en su nombre. Sostuvo que la

---

[11] Íd., pág., 291.
[12] Íd., págs., 294-427.
[13] Íd., págs., 429-443.

finca 20,715 estaba enclavada, pues no tenía acceso a la vía pública y que los apelantes tenían conocimiento de esa situación. Así, la ACT reiteró en que los apelantes estaban ocupando parte de un terreno que les pertenecía. A su vez, mantuvo su postura en cuanto a que no tenía problema con la continuación de los procedimientos sobre ejecución de hipoteca. Recalcó que la agencia estaba dispuesta a vender la porción ocupada con la salvaguarda de que existía una deuda por concepto de renta y uso y disfrute por el tiempo en que los apelantes ocuparon dicha porción.

Subsiguientemente, el 31 de octubre de 2023, el TPI emitió su *Sentencia*.[14] Mediante esta formuló las siguientes determinaciones de hechos incontrovertidos:

1. El 21 de septiembre de 2012, el Banco Bilbao Vizcaya Argentaria (ahora Oriental) y San Sebastián Properties, LLC suscribieron un contrato de préstamo a plazos.

2. Mediante el referido contrato, el Banco le concedió a dicha corporación la suma de $1,500,000.00 como préstamo.

3. Según convenido, el préstamo devengaría intereses diariamente sobre el balance insoluto de principal a razón de 6.00% anual.

4. Asimismo, en el contrato de préstamo se convino un plazo de 60 meses para su vencimiento. Es decir, 5 años. Los pagos serían de la siguiente forma: cincuenta y nueve (59) plazos mensuales de $10,746.47 comenzando 21 de octubre de 2012; y un (1) solo plazo final englobado (balloon) por el balance insoluto de principal más intereses a razón del tipo pactado a efectuare el 21 de septiembre de 2017.

5. Además, se pactó que el préstamo se utilizaría única y exclusivamente para los siguientes propósitos: "Ochocientos Cincuenta Mil Dólares ($850,000.00) para el pago de inversión a la compañía matriz de la Corporación, a saber, Crimson Devlelopment Group, Inc., relacionado con la compra de la propiedad inmueble dada en garantía colateral del Préstamo a Plazos; y Seiscientos Cincuenta Mil Dólares ($650,000.00) para realizar mejoras a dicha propiedad inmueble.

6. En caso de incumplimiento, se convino que las cantidades adeudadas devengarían intereses de incumplimiento y/o mora a razón del tipo resultante al

---

[14] Íd., págs., 590-616.

añadir tres (3) puntos porcentuales al tipo de interés pactado desde la fecha de incumplimiento hasta el pago total de las cantidades adeudadas.

7. Asimismo, se pactó que la obligación del Banco de desembolsar el préstamo quedaba sujeta a las siguientes condiciones precedentes: (1) que no exista un evento de incumplimiento por parte de la corporación; (2) que las representaciones y garantías de la corporación sean correctas y ciertas al momento de la otorgación del contrato y durante su desembolso; (3) que la corporación haya pagado todos los gastos y desembolsos a los que esté obligada bajo el préstamo; (4) que no haya ocurrido un cambio material adverso; (5) que la corporación haya entregado el contrato debidamente firmado y otros documentos requeridos por el banco.

8. En el Artículo 2 del contrato de préstamo se establecieron una serie de deberes y obligaciones de la corporación y los garantizadores (San Sebastián Properties).

9. En el Artículo 3 del contrato de préstamo se establecieron los eventos que constituirían incumplimiento, entre los que figuraban: falta de pago y representaciones falsas.

10. En el Artículo 4 del contrato de préstamo se recogieron términos y condiciones adicionales, tales como: la ley aplicable (la de Puerto Rico); la prohibición a que el contrato sea cedido por la corporación, entre otras.

11. Para garantizar la obligación, San Sebastián Properties constituyó tres garantías.

12. La primera, un pagaré hipotecario a la orden del Banco Bilbao Vizcaya Argentaria (Oriental) por la suma principal de $1,500,000, con vencimiento a su presentación. En este pagaré se convino que, en caso de incumplimiento, las cantidades adeudadas devengarían intereses de incumplimiento y/o mora a razón del tipo resultante al añadir tres (3) puntos porcentuales al tipo de interés pactado desde la fecha de incumplimiento y/o mora. Además, San Sebastián Properties se obligó a pagar las costas y honorarios a razón de $150,000, en caso de cobro por la vía judicial.

13. El referido pagaré estaba garantizado con hipoteca constituida por la Escritura Núm. 120 de 21 de septiembre de 2012, sobre la siguiente propiedad:

RÚSTICA: Radicada en el Barrio Guatemala de San Sebastián, Puerto Rico, con una cabida superficial de UNO PUNTO CUATRO MIL QUINIENTOS OCHENTA Y CUATRO CUERDAS (1,4584 cdas.) de terreno, equivalentes a cinco mil setecientos treinta y dos puntos dos mil trescientos noventa y dos metros cuadrados (5,732.2392 m.c.). En lindes por el NORTE, CON

Carretera número Ciento once (111); por el SUR, con Municipio de San Sebastián y remanente de la finca principal a ser adjudicado a Felipe Vargas Vargas; por el ESTE, con Municipio de San Sebastián; y por el OESTE, con remanente de la finca principal a ser adjudicado a Felipe Vargas Vargas.

Consta inscrita al folio diez (10) del tomo trescientos ochenta y nueve (389) de San Sebastián, finca número veinte mil setecientos quince (20,715), Registro de la Propiedad Sección de San Sebastián.

14. Conforme la Escritura Núm. 120, San Sebastián Properties se obligó, entre otras cosas, a mantener asegurada la estructura hipotecada. Además, en dicha escritura San Sebastián Properties acordó endosar a favor de Oriental las pólizas de seguro "de suerte que toda pérdida se pague directamente al Acreedor y que no se cancelen sin la previa notificación al Acreedor."

15. Igualmente, en la Escritura Núm. 120 se acordó que Oriental tendría discreción para optar por utilizar el producto de las pólizas para reconstruir la propiedad siniestrada o para abonar al pago del pagaré hipotecario:

Las pólizas de seguro se entregarán al Acreedor debiendo las mismas haberse previamente endosado a su favor de suerte que toda pérdida se pague directamente al Acreedor y que no se cancelen sin la previa notificación al Acreedor. El Acreedor tendrá la discreción de optar por utilizar el producto de las pólizas para reconstruir la propiedad siniestrada, o para abonar al pago del Pagaré Hipotecario en el siguiente orden y/o a su discreción: Primero, para cubrir intereses adeudados; Segundo, para cubrir el pago del principal; Tercero, para cubrir las sumas adicionales garantizadas por esta hipoteca, cubrir el pago de primas de seguro, contribuciones, imposiciones y cargos sobre la Propiedad Hipotecada vencidas o por vencer, además de cubrir el pago de fondos en reserva suficientes para dichos propósitos, y el remanente, si alguno, será del DEUDOR HIPOTECANTE.

16. Conforme la Escritura Núm. 120, el precio mínimo para la primera subasta es de $1,500,000.

17. Por otra parte, el mismo 21 de septiembre de 2012 la señora Ivonne Ocasio Espino suscribió una Garantía Ilimitada y Continua en su capacidad personal. En ella, la señora Ocasio Espino garantizó "mancomunada y solidariamente con el prestatario[...], el pago puntual a su vencimiento [...], de todos y cada uno de los préstamos [...], conjuntamente con cuantos gastos puedan incurrirse [...] en el cobro de toda o cualquier parte de dicha deuda, o al ejercitar cualquier derecho bajo los términos de este instrumento."

18. También, el 21 de septiembre de 2012 la corporación Grimson Development Group, Inc., por medio de su

presidenta la señora Ocasio Espino, suscribió una Garantía Ilimitada y Continua. Allí, Crimson garantizó "mancomunada y solidariamente con el prestatario [...] el pago puntual a su vencimiento [...] de todos y cada uno de los préstamos [...], conjuntamente con cuantos gastos puedan incurrirse [...] en el cobro de toda o cualquier parte de dicha deuda, o al ejercitar cualquier derecho bajo los términos de este instrumento."

19. Oriental es la tenedora legal de buena fe del pagaré hipotecario que garantiza el pago de la deuda que se reclama en esta acción.

20. La parte demandada incurrió en el incumplimiento de su obligación, con relación al préstamo identificado por Oriental con el número 1605695-1, por lo que la parte demandante ha declarado vencida en su totalidad la deuda.

21. Al 13 de noviembre de 2018, la deuda principal por concepto del préstamo número 1605695-1, asciende a la suma de $1,422,285.86, de los que $1,318,692.29 corresponden a principal, $97,145.73 a intereses acumulados y que continuarán acumulándose diariamente a razón de $219.78, y $6,447.84 de cargos por demora; más la cantidad de $150,000.00 por costas, gastos y honorarios de abogado, y cualquier otro desembolso que haya efectuado o efectúe la parte demandante durante la tramitación de este caso para otros adelantos.

22. En cumplimiento con las disposiciones de la Ley Hipotecaria, las partes pactaron que la propiedad garantizadora del préstamo número 1605695-1 tiene un valor de $1,500,000.00 y este valor servirá como oferta minima en la primera subasta de la hipoteca cuya ejecución se solicita.

23. La parte demandada adeuda a Oriental las sumas antes expresadas, habiéndose requerido el pago de las mismas, sin resultado alguno a pesar de las diligencias y gestiones de cobro hechas por la parte demandante.

24. Las obligaciones que surgen del contrato y el pagaré están vencidas, son líquidas y legalmente exigibles, además de estar garantizadas por la hipoteca sobre el inmueble descrito y por las garantías suscritas por la señora Ocasio Espino y por Crimson.

25. Los demandados solidariamente adeudan a Oriental las sumas antes expresadas, habiéndose requerido el pago de las mismas, sin resultado alguno a pesar de las diligencias y gestiones de cobro hechas por el demandante.[15]

---

[15] Íd., págs., 598-601.

A base de estas determinaciones de hechos, el TPI concluyó que Oriental logró demostrar falta de controversia en cuanto los hechos esenciales del caso y, de la misma forma, demostró que los apelantes incumplieron el pago bajo los términos habían convenido. De tal manera, desestimó la reconvención presentada por los apelantes toda vez que estos no pudieron demostrar que Oriental incurriera en actos dolosos. Así pues, el TPI declaró Ha Lugar la solicitud de sentencia sumaria de Oriental y No Ha Lugar la moción de desestimación de los apelantes. En consecuencia, condenó a los apelantes al pago de $1,422,285.29 por concepto del incumplimiento del pago del préstamo. De igual manera, concluyó que, una vez la sentencia adviniera final y firme, de no realizarse el correspondiente pago, se facultaría a la Secretaría del Tribunal a que expidiera el mandamiento dirigido al Alguacil del Tribunal para que este procediera ejecutar la sentencia, y vendiera en pública subasta la propiedad hipotecada descrita en el dictamen.

Inconformes, el 16 de noviembre de 2023, los apelantes presentaron una *Moción de Reconsideración [...].*[16] En esta, argumentaron, que existía falta de acumulación de parte indispensable en este caso y que era necesaria la adjudicación del pleito de expediente de dominio para la disposición del presente caso, entre otros tantos planteamientos. El 30 de noviembre de 2023, el TPI emitió una *Resolución* en la cual declaró No Ha Lugar la solicitud de reconsideración.[17]

Aun Insatisfechos, el 7 de enero de 2024, los apelantes acudieron ante nos mediante una *Apelación Civil* y formularon los siguientes señalamientos de error:

> **Erró el Honorable Tribunal de Primera Instancia al emitir la *Sentencia* de forma sumaria a pesar de existir controversias sustanciales que afectan la**

---

[16] Íd., págs., 617-636.
[17] Íd., págs., 637-639.

**validez de la hipoteca sobre la finca 20,715 que se autorizó mediante ella ejecutar.**

**Erró el Honorable Tribunal de Primera Instancia al no posponer su determinación hasta tanto no se resolviera el Caso A2CI201600208 sobre dominio contradictorio entre el Apelante y la Autoridad de Carreteras que aún está pendiente de adjudicación ante el Tribunal de Primera Instancia, Sala Superior de San Sebastián.**

**Erró el Honorable Tribunal de Primera Instancia al emitir una Sentencia que no desestima el pleito por falta de parte indispensable y permitiendo la ejecución de la finca 20,715 pese a que del récord se desprendía que la titularidad de parte de dicha finca está en disputa con Autoridad de Carreteras y Transportación del Estado Libre Asociado de Puerto Rico quien no fue incluida como parte indispensable en el pleito para salvaguardar su interés**

Atendido el recurso, le concedimos a Oriental hasta el 6 de febrero de 2024, para que presentara su alegato en oposición. Oportunamente, Oriental presentó su *Alegato en Oposición* y mediante esta negó la comisión de los errores imputados por los apelantes. Con el beneficio de la comparecencia de ambas partes, nos disponemos a resolver la controversia que está ante nuestra consideración.

II.

-A-

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la

reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra*,* pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de

Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).

**-B-**

En nuestra jurisdicción los contratos son una fuente de obligación.  Art. 1042 del Código Civil, 31 LPRA sec. 2992.[18]  Entre las partes contratantes, las obligaciones que surgen de ellos tienen fuerza de ley y deben cumplirse al tenor de los mismos.  Art. 1044

---

[18] El Código Civil de 1930 fue derogado por la Ley 55-2020, conocida como el Código Civil de Puerto Rico de 2020. Sin embargo, para propósitos de la adjudicación de este caso estaremos citando el Código Civil derogado, el cual estaba vigente al momento en que surgieron los hechos que dieron lugar a la presente controversia.

del Código Civil, 31 LPRA sec. 2994. Conforme con el principio rector de libertad de contratación, las partes podrán establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Art. 1207 del Código Civil, 31 LPRA sec. 3372; *Abengoa, S.A. v. American Intl. Ins.*, 176 DPR 512 (2009).

La hipoteca se considera derecho real de realización del valor, en su función de garantía de una obligación pecuniaria, de carácter accesorio e indivisible, de constitución registral, que recae directamente sobre bienes inmuebles, ajenos y enajenables, que permanecen en la posesión del propietario. *Westernbank v. Registradora*, 174 DPR 779 (2008). Como en todo contrato, su validez requiere que concurran el consentimiento, el objeto y la causa. 31 LPRA sec. 3391. Véase, además, *Romero v. S.L.G. Reyes*, 164 DPR 721 (2005). Al igual que la prenda, la hipoteca requiere: 1) que se constituya para el aseguramiento de una obligación principal; 2) que quien la instituya sea dueño de la cosa hipotecada; y 3) que las personas que la constituyan tengan la libre disposición de sus bienes o que estén legamente autorizadas a dicho efecto. Art. 1756 del Código Civil, 31 LPRA 5001. Al ser un derecho real cuya inscripción es constitutiva, la validez de la hipoteca requiere que esté inscrita en el Registro de la Propiedad. Art. 1774 del Código Civil de Puerto Rico, 31 LPRA sec. 5042.

Por su parte, existen tres vías procesales por las que el acreedor hipotecario puede hacer efectivo su crédito y ejecutar la garantía real: la ejecución de la hipoteca por la vía ordinaria; el procedimiento ejecutivo sumario; y la acción ordinaria de cobro de dinero, con el posible embargo de la finca en aseguramiento de sentencia. *Atanacia Corp. v. J.M. Saldaña, Inc.*, 133 DPR 284 (1993). La acción judicial ordinaria para el cobro del crédito

hipotecario es de naturaleza mixta pues contiene elementos de la acción real y personal.  Íd.

**-C-**

La Regla 16.1 de Procedimiento Civil, *supra*, regula todo lo relacionado con la falta de parte indispensable en un pleito. En lo pertinente, la aludida regla dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". En otras palabras, "de una parte indispensable no se puede prescindir, pues, sin su presencia, las cuestiones litigiosas no pueden adjudicarse correctamente, ya que sus derechos quedarían afectados". *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 433 (2003).

Consonó con lo anterior, el Tribunal Supremo ha explicado que:

> [e]l tercero ausente [en el pleito] debe tener [tal] interés común en [este] que convierte su presencia en un requisito indispensable para impartir justicia completa o de tal orden que impida la confección de un decreto sin afectarlo. La justicia completa es aquella entre las partes y no la que se refiere a una parte y al ausente. El interés común tiene que ser uno real e inmediato. *López García v. López García,* 200 DPR 50, 63 (2018) citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. Lexisnexis, 2017, Sec. 1202, pág. 166.

Es importante puntualizar que el interés en el pleito debe ser de tal orden que impida la confección de un derecho adecuado sin afectar o destruir radicalmente los derechos de esa parte. *Romero v. SLG Reyes*, 164 DPR 721, 733 (2005).

El precepto procesal instituido en la Regla 16.1 de Procedimiento Civil, *supra*, forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley. *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743, 756 (2003); Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. Además, esta regla parte de la necesidad de

incluir a una parte indispensable para que el decreto judicial emitido sea completo. *López García v. López García, supra,* pág. 64. Por otro lado, es imperativo destacar que "la falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso". Íd., pág. 65. Incluso, los foros apelativos pueden y deben levantar *motu proprio* la falta de parte indispensable en un pleito, pues ello incide sobre su jurisdicción. Íd. Lo anterior quiere decir que la omisión de traer a una parte indispensable al pleito constituye una violación al debido proceso de ley. *Romero v. SLG Reyes, supra,* pág. 732.

La determinación final de si una parte debe o no acumularse depende las circunstancias particulares de cada caso. Íd. En ese sentido, dicha determinación "[e]xige una evaluación jurídica de factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad". *López García v. López García, supra,* pág. 65. En conclusión, "cuando en un pleito las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular". Íd. Finalmente, es importante puntualizar que no es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de sus derechos mediante sentencia. Íd.

III.

En el presente recurso, los apelantes impugnaron una *Sentencia* que el TPI dictó el 31 de octubre de 2023 y notificó el 1 de noviembre de 2023. En específico, los apelantes alegaron que el TPI erró al disponer de esta controversia de forma sumaria pese que existían controversias sustanciales que afectaban la validez de la

hipoteca de la propiedad en cuestión. A su vez, sostuvieron que el TPI incidió en no posponer su dictamen hasta tanto no se resolviera un caso sobre expediente de dominio contradictorio entre los apelantes y la ACT. Por último, esbozó que el TPI erró al no desestimar el presente caso por dejar de acumular una parte indispensable.

Antes de atender los señalamientos de error previamente reseñados, es preciso resaltar que, al momento de revisar la concesión de una sentencia sumaria, nos encontramos en la misma posición que el foro primario. Cónsono con esta norma, debemos evaluar, en primer lugar, si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* y con los dispuestos en *SLG Zapata-Rivera v. J.F. Montalvo,* supra. Al evaluar los escritos presentados por las partes juzgamos que, en esencia, ambas cumplieron con los referidos requisitos. Es decir, Oriental presentó una serie de párrafos enumerados de los hechos que considera incontrovertidos, los cuales, a su vez, hacían referencia a la prueba en que se apoyaba. De la misma manera, los apelantes señalaron los hechos que, a su juicio, estaban en controversia y lo sustentaron con prueba documental. Resuelto lo anterior, nos corresponde entonces evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria. Por estar íntimamente relacionados, procederemos a discutir los tres (3) señalamientos de error, formulados por los apelantes de manera conjunta.

En su dictamen, el TPI realizó veinticinco (25) determinaciones de hechos que no estaban en controversia las **cuales procederemos a resumir y adoptar en su totalidad.** El 21 de septiembre BBVA, quien es ahora Oriental, y San Sebastián Properties, LLC suscribieron un contrato de préstamo a plazos en el

cual el banco le concedió a la corporación la suma de un millón quinientos mil dórales ($1,500,000.00). De esta cantidad antes expuesta, se pactó que ochocientos cincuenta mil dólares (850,000.00) se utilizarían para la compra de la propiedad inmueble en cuestión y seiscientos cincuenta mil dólares (650,000.00) para realizar mejoras a dicha propiedad. Además, se convino un plazo de sesenta (60) meses para el vencimiento del préstamo, en los cuales cincuenta y nueve (59) de estos conllevarían un pago de $10, 746.47 y el último pago, sería uno englobado por le bance insoluto del principal más los intereses pactados.

Del mismo modo, para garantizar la obligación, San Sebastián Properties, LLC constituyó tres (3) garantías. Una de ellas, fue un pagaré hipotecario a la orden de BBVA por la suma principal de un millón quinientos mil dórales ($1,500,000.00), con vencimiento a su presentación. Esta hipoteca fue constituida en la Escritura Pública Número 120 de 21 de septiembre de 2012 sobre el inmueble en controversia. Las otras dos (2) garantías se constituyeron mediante dos documentos separados ambos intitulado *Garantía Ilimitada y Continua.* Uno de los documentos se suscribió por la señora Ocasio Espino en su carácter personal y el otro se suscribió por esta última en representación de Grimson Development Group, Inc. En esencia, ambos suscribientes garantizaron mancomunada y solidariamente con el prestatario el pago puntual a su vencimiento de todos los préstamos, en el cobro de toda o cualquier parte de la deuda bajo los términos del instrumento público.

Posteriormente, Oriental se convirtió en la tenedora legal de buena fe del pagaré hipotecario que garantizaba el pago de la deuda que se reclamaba en la presente controversia. Así las cosas, conforme surge de autos, los apelantes incurrieron en el incumplimiento de su obligación por lo que el apelado declaró vencida la totalidad de la deuda. Igualmente, surge del expediente,

que Oriental le requirió el pago de la deuda a los apelantes en varias instancias, pero estos intentos no rindieron resultados. Así pues, a base de los negocios jurídicos convenidos por las partes de epígrafe y el incumplimiento de las obligaciones pactadas por parte de los apelantes, estos últimos son deudores solidarios de la deuda reclamada por Oriental.

Luego de revisar la totalidad del expediente, examinado los argumentos de ambas partes y aquilatada la prueba documental que obra en el expediente, concluimos que no existe hechos sustanciales en controversia que nos impida dictar sentencia sumaria. Por tal motivo, nos resta determinar si en efecto, procede condenar a los apelantes al pago de la deuda que asciende a la suma de $1,422,285.86 y de la misma forma si procede la posterior venta en pública subasta que garantiza la deuda reclamada por Oriental. *Veamos.*

En este caso, es un hecho incontrovertido que los apelantes suscribieron un contrato de préstamo y garantizaron dicho negocio jurídico con una hipoteca. Tampoco está en controversia, que los apelantes incumplieron con sus obligaciones conforme al contrato convenido, lo cual convirtió en vencida la deuda. Sin embargo, los apelantes plantearon que no se podía disponer este caso por la vía sumaria toda vez no se trajo al pleito a una parte con interés, entiéndase, la ACT.

Surge de los autos que, a solicitud del TPI, la ACT realizó dos (2) comparecencias especiales luego de realizar una investigación en cuanto a la propiedad en controversia. En dichas mociones **informó que no tenía interés en la propiedad sujeto a ejecución y tampoco tenía ningún tipo de objeción en cuanto a que Oriental ejecutara la hipoteca.** Ello, luego de que la agencia realizara una investigación en la cual concluyó que la finca a la que hicieron alusión los apelantes en su moción de desestimación y la finca

objeto de este pleito eran distintas. En ese sentido, la ACT razonó que la propiedad sujeta a ejecución, entiéndase la finca 20,715, no solo le pertenecía a los apelantes, sino que estos ocupaban un pedazo de otro terreno perteneciente a la ACT. De este modo, la agencia aclaró que no tenía reparo en que la propiedad se ejecutara, pero recalcó que esta podía reclamarle a quien quiera que fuese el dueño de la finca 20,715 por la ocupación de parte de un terreno propiedad de la ACT. Así pues, el TPI recogió esta postura en una *Orden* que dictó el 5 de octubre de 2022, en la cual ordenó la continuación de los procedimientos**, puesto que la ACT manifestó no tener interés en la finca en controversia.**[19]

Es norma reiterada en nuestro ordenamiento jurídico que el interés común que una parte debe tener para que sea considerada indispensable debe ser tal, que su presencia sea un requisito necesario para impartir justicia completa o de tal orden que impida la confección de un derecho sin afectarlo. *López García v. López García,* supra, pág. 63. (citas omitidas) Es decir, que la justicia que se imparta se aplique a todas las partes y no solo a algunas de las afectadas. Íd. Concluimos que estas circunstancias no se encuentran presente en el caso particular de la ACT.

En primer lugar, recalcamos que la ACT ha reiterado no tener interés en la finca 20,715. Ello, pese a la existencia de un pleito sobre expediente de dominio que no ha sido adjudicado, el cual versa sobre la extensión de la propiedad en cuestión, la cual colinda con ciertos predios pertenecientes a la agencia. Sostenemos que la existencia es pleito pendiente no imposibilita la ejecución del derecho real de hipoteca que ostenta Oriental sobre la finca 20,715.

---

[19] No obstante, pese a esta determinación del TPI, es importante resaltar que en su *Moción en Cumplimiento de Orden* presentada el 13 de diciembre de 2022, la ACT manifestó que la finca 20,715 estaba enclavada, no tenía acceso directo a ninguna vía pública y quién quiera que fuese el propietario de la referida finca le adeudaba dinero a la agencia por utilización exclusiva de su finca. Véase, pág. 435 del apéndice del recurso.

Asimismo, es preciso resaltar que la no adjudicación de un caso de expediente de dominio entre la ACT y los apelantes no debe reflejar impedimento para que se ejecute la hipoteca, toda vez que el expediente de dominio no es una declaración de un derecho. *Rodríguez v. Registrador*, 75 DPR 712, 732 (1953). La función de un juez en este tipo de casos se limita únicamente a determinar justificado o no el dominio de los bienes en cuestión. En dado caso, cualquier tipo de discrepancia en cuanto las cabidas de una u otra finca, puede resolverse en un pleito separado.

A tenor con los fundamentos antes esbozados, colegimos que ninguno de los tres (3) errores formulados por los apelantes fueron cometidos. Por tal motivo, el TPI no erró al declarar Ha Lugar la moción de sentencia sumaria y declarar la deuda en controversia como vencida, líquida y exigible condenando así a los apelantes al pago de esta. Por consiguiente, corresponde confirmar el dictamen apelado.

### IV.

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* apelada

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones