ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>PETICIONARIA<br><br>v.<br><br>JOSÉ M. COUVERTIER RIVERA, SU ESPOSA LESBIA W. GARAY NÚÑEZ Y LA SOCIEDAD COMPUESTA POR AMBOS<br><br>RECURRIDOS | KLCE202500516 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Número:<br>E CD2016-0076<br><br><br>Sobre:<br>Cobro de dinero y Ejecución de hipoteca |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de julio de 2025.

Comparece Oriental Bank (Oriental; parte demandante-peticionaria) mediante el presente recurso de *Certiorari* y nos solicita que revoquemos la *Resolución* emitida el 28 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas, y notificada el 7 de marzo de 2025. En el aludido dictamen, el foro de instancia declaró No Ha Lugar la solicitud de ejecución de sentencia al amparo de la Regla 51.3 de Procedimiento Civil de Puerto Rico (Procedimiento Civil), 32 LPRA Ap. V, R. 51.3 presentada por Oriental.

Adelantamos que, por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* solicitado y revocamos al Tribunal de Primera Instancia.

**I**

Los hechos ante nuestra consideración tienen su génesis en la *Sentencia* emitida el 30 de octubre de 2020, notificada el 4 de noviembre del mismo año, por el Tribunal de Primera Instancia en el caso E CD2016-0076 sobre cobro de dinero y ejecución de

hipoteca presentado por Oriental contra el señor José M. Couvertier Rivera, la señora Lesbia W. Garay Nuñez y la sociedad legal de bienes gananciales compuesta por ambos (Sr. Couvertier Rivera y la Sra. Garay Nuñez; parte demandada-recurrida).[1] En esencia, el foro primario resolvió que la parte demandada incumplió con las obligaciones acordadas en el contrato de hipoteca, plasmada en el Escritura 96, sobre la propiedad que se describe como sigue:

> **Urbana:** Solar marcado con el número ochenta y tres (83) en el plano de inscripción de la Urbanización Vistalago en el término municipal de Gurabo, Puerto Rico con un área superficial de QUINIENTOS DIEZ PUNTO CERO CERO (510.00) METRO CUADRADOS. En lindes por el NORTE, en veinticinco puntos cincuenta (25.50) metros con el solar número ochenta y dos (82); por el SUR, en veinticinco punto cincuenta (25.50) metros con el solar número ochenta y cuatro (84); por el ESTE, en veinte punto cero cero (20.00) metros con la calle número cuatro (4) y por el OESTE, en veinte punto cero cero (20.00) metros con los solares ochenta y seis (86) y ochenta y siete (87) en estas colindancias hay construido un muro de contención.

> Inscrita al folio 113 del tomo 498 de Gurabo, finca #19, 442, inscripción 2da.

Por tal razón, condenó a la parte demandada a pagarle a la parte demandante la suma de $265,248.99 de principal, más los intereses al tipo convenido al cinco punto cincuenta por ciento (5.50%) anual, desde el día de su incumplimiento, 1 de septiembre de 2015, hasta su total y los gastos y honorarios de abogado de $32,732.70 y completo pago, según convenido por las partes. Del mismo modo, el foro sentenciador facultó y ordenó a la Secretaria del Tribunal, a requerimiento de la parte demandante, expedir un Mandamiento y Orden dirigidas al Alguacil del Tribunal para la ejecución de la *Sentencia*, para así vender en pública subasta la propiedad hipotecada, mediante la cual el importe de la referida

---

[1] Apéndice del recurso de *Certiorari*, págs. 29-48.

venta se pagará a la parte demandante las cantidades adjudicadas en la sentencia.

El 17 de junio de 2022, Oriental presentó una *Moción en Solicitud de Ejecución de Sentencia* en la cual, en síntesis, solicitó al Tribunal que se continuara con la ejecución de la *Sentencia.*[2]

El 5 de marzo de 2023, Oriental presentó una *Moción Sometiendo Documentos de Venta en Pública Subasta.*[3] En el aludido escrito, certificó haber cumplido con el procedimiento de notificación de subasta establecido en la Regla 51.7 de Procedimiento Civil, 32 LPRA Ap. V, R. 51.3.

Así las cosas, en la celebración de la segunda subasta el 18 de abril de 2023, se le adjudicó la buena pro a Oriental por la cantidad de $188,666.67 dólares.[4] El 27 de abril de 2023, Oriental presentó una *Moción Solicitando Cancelación de Gravámenes Posteriores.*[5] En el referido escrito, solicitó al foro primario que se cancelaran a la propiedad antes descrita todos los gravámenes posteriores a la hipoteca. El 2 de mayo de 2023, el Tribunal de Primera Instancia emitió una *Orden* mediante la cual declaró Con Lugar la citada moción y ordenó al Alguacil a proceder con el desalojo o lanzamiento de los ocupantes de la propiedad subastada.[6]

Luego de varios trámites procesales, el 9 de enero de 2024, Oriental presentó una *Moción Solicitando Ejecución de Sentencia bajo la Regla 51.3 (B) de Procedimiento Civil.*[7] En el referido escrito, alegó que luego de que adviniera final y firme la Sentencia, se procedió a vender en pública subasta el inmueble hipotecado obteniendo esta la buena pro por la suma de $188,666.67. Arguyó que esta cantidad no fue suficiente para satisfacer la totalidad de

---

[2] Apéndice del recurso de *Certiorari,* págs. 51-53.
[3] *Id.* págs. 66-83.
[4] *Id.* págs. 73-83.
[5] *Id.* págs. 84-86.
[6] *Id.* pág. 91.
[7] *Id.* págs. 99- 101.

la cantidad adeudada, la cual era $413,027.52 que incluye el principal, intereses y honorarios de abogado. Adujo que, al substraerle la cantidad adjudicada en buena pro de la propiedad subastada a la cantidad adeudada restaría satisfacer la cantidad de $224,360.85. Por lo que solicitó al foro primario adquirir el dinero restante, mediante el embargo y la venta en pública subasta de los bienes adicionales pertenecientes a los demandados. Entre estos, la parte demandante expresó que fueran aquellos bienes en la posesión de los demandados o terceros, con excepción de aquellos bienes exentos por el Artículo 249 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 1130, entre otros.

El 9 de agosto de 2024, la parte demandada presentó una *Oposición a "Moción Solicitando Ejecución de Sentencia Bajo la Regla 51.3 (B) de Procedimiento Civil"*.[8] En esencia, la parte demandada se opuso al embargo de sus bienes. Alegó que la suma de $224,360.85 que deseaba adquirir la parte demandante, por concepto de la *Sentencia*, fue extinguido en su totalidad en el momento que esta última vendió la propiedad hipotecada por la cantidad de $310,000.00. Adujo, además, que la parte demandante se había enriquecido más allá de lo que le correspondía recibir por la sentencia.

En respuesta el 30 de septiembre de 2024, Oriental presentó su *Réplica a Oposición a Moción Solicitando Ejecución de Sentencia Bajo la Regla 51.3 (B) de Procedimiento Civil*.[9] En síntesis, arguyó que luego de transcurrida la primera y la segunda subasta pública esta se adjudicó la buena pro de la propiedad por la cantidad de $188,666.67, un monto insuficiente para satisfacer la cantidad de $413,027.52 adjudicada en la *Sentencia*. Por ende, adujo que al

---

[8] Apéndice del recurso de *Certiorari*, págs. 104-108.
[9] *Íd.* págs. 109-116.

existir una deficiencia de $224,360.85, procedía cobrarla según dispone la Regla 51.3 de Procedimiento Civil, *supra*.

El 8 de octubre de 2024, la parte demandada presentó una *Moción Informando Intención de Radicar Dúplica, Solicitando Asunto No Se De por Sometido Hasta Entonces*.[10] En el aludido escrito, aduce que en el caso *S.L.G. Sánchez v. S.L.G. Valentín,* 186 DPR 503 (2012), el Tribunal Supremo de Puerto Rico había resuelto que en circunstancias en las cuales un acreedor por sentencia ejecuta en subasta una propiedad del deudor, en las cuales el propio acreedor se adjudica la propiedad del deudor, el deudor tiene derecho a que se le descuente el verdadero valor de la propiedad del monto establecido en la sentencia.

En respuesta el 21 de octubre de 2024 la parte demandante presentó su *Oposición a "Moción Informando Intención de Radica[r] R[é]plica y Solicitando Asunto No Se Dé Por Sometido Hasta Entonces"*.[11] En esencia, alegó que no procedía la aplicación de los resuelto por el Tribunal Supremo en el caso *S.L.G. Sánchez v. S.L.G. Valentín, supra,* en el caso ante nuestra consideración, pues la controversia en el precitado caso giraba en torno en si se debía fijar un precio mínimo para la venta de una propiedad inmueble en pública subasta que fue producto de un trámite ordinario de cobro de dinero, sin que mediara una garantía hipotecaria. Reafirmó su posición respecto a que existía una deficiencia de $224,360.85 sobre la cantidad total adeudada por la parte demandada, pues la venta en pública subasta de la propiedad hipotecada no produjo un monto suficiente para satisfacer la *Sentencia*. Adujo que no procedía el planteamiento de enriquecimiento injusto hecho por la parte demandada, pues el enriquecimiento del acreedor estaba justificado por los preceptos legales de Puerto Rico, en específico el

---

[10] Apéndice del recurso de *Certiorari,* págs.117-119.
[11] *Id.* págs. 120-123.

Artículo 1811 del Código Civil de 1930, 31 LPRA sec. 5171; Regla 51.3 de Procedimiento Civil, *supra*; Artículo 106 de la Ley Núm.210 de 2015, 30 LPRA sec. 6143.

El 8 de noviembre de 2024, la parte demandada presentó una *Dúplica* en la cual discutió lo resuelto por el Tribunal Supremo en el caso *S.L.G. Sánchez v. S.L.G. Valentín, supra*.[12] Alegó que no le asiste la razón a la parte demandante en su planteamiento de que la normativa establecida en el caso precitado es solo de aplicación en casos donde se ejecuta un embargo mediante la venta de una propiedad, en pública subasta, sin garantía hipotecaria. Adujo que lo importante según la normativa establecida, son las equidades envueltas en la transacción, es decir que el acreedor tendrá derecho a recibir el valor equivalente a su crédito por sentencia y nada más, pues pretender cobrar más al valor de lo ya recibido sería considerado enriquecimiento injusto. Por tal razón, reafirmaron que la doctrina vigente en nuestro ordenamiento jurídico establece que en las situaciones en las cuales el acreedor ejecutante se adjudica asimismo la buena pro de una propiedad en una subasta pública, por menos de la total*idad* de su crédito por sentencia y este pretenda seguir ejecutando la deficiencia de su sentencia con otros bienes del deudor, el deudor tendrá derecho a presentar prueba sobre el verdadero valor en el mercado de la propiedad ejecutada. Añadió, que luego de recibir la prueba, el tribunal deberá determinar el *equity* que recibió el acreedor al momento en que se adjudicó la propiedad en subasta y esta cantidad debía ser restada a cualquier cantidad que todavía quedase por cobrar en la sentencia. Por lo que, en esencia, arguyó que lo importante no era determinar en cuanto vendió el acreedor la propiedad adjudicada, sino el valor de la propiedad en el mercado al momento en el que se llevó a cabo la subasta.

---

[12] Apéndice del recurso de *Certiorari*, págs. 124-129.

El 18 de noviembre de 2024, Oriental presentó una *Oposición a Dúplica y Moción para Continuar con Ejecución de Sentencia Bajo la Regla 51.3 (B) de Procedimiento Civil.*[13] En el cual reiteró los planteamientos antes esbozados en sus escritos.

En respuesta, el 2 de diciembre de 2024, la parte demandada presentó su *Réplica a Oposición a Dúplica, Sometiendo Evidencia de Valor, y en Solicitud de que se de por Satisfecha la Sentencia.*[14] En esencia, reiteró los planteamientos antes plasmados y alegó que procedía descontar la cantidad de $327,000.00 dólares del balance adeudado a la parte demandante según la *Sentencia*. Esto es así, pues arguyó que el balance adeudado ha sido satisfecho en su totalidad.

El 20 de diciembre de 2024, Oriental presentó su *Oposición a Réplica, y Moción para Continuar con Ejecución de Sentencia bajo la Regla 51.3 (B) de Procedimiento Civil.*[15]

Finalmente, el 28 de febrero de 2025, notificada el 7 de marzo de 2025, el Tribunal de Primera Instancia emitió una *Resolución* en la cual declaró No Ha Lugar la solicitud de ejecución de sentencia al amparo de la Regla 51.3 de Procedimiento Civil, *supra*, presentada por Oriental.[16] En el aludido escrito, el foro de instancia resolvió que la cantidad adeudada a Oriental quedó extinguida en su totalidad en el momento que esta ejecutó y vendió la propiedad hipotecada. En esencia, el foro primario razonó que debido a que Oriental se adjudicó la buena pro de la propiedad por la cantidad de $188,666.67, y luego vendió la misma por la cantidad de $315,000.00, recibió un beneficio económico por motivo de su venta que era mayor a la deficiencia de $224,360.85. Por tal razón, el tribunal concluyó que permitir que Oriental ejecute otros bienes de la parte demandada para satisfacer la

---

[13] Apéndice del recurso de *Certiorari*, págs. 130-133.
[14] *Id.* págs. 134-144.
[15] *Id.* págs. 145-147.
[16] *Id.* págs. 1-11.

deficiencia de $224,360.85 equivaldría a un enriquecimiento injusto por parte de Oriental.

El 24 de marzo de 2025, Oriental presentó una *Moción de Reconsideración*.[17] La demandada presentó su *Oposición a Moción de Reconsideración*, el 15 de abril de 2025,[18] y en esa misma fecha fue declarada No Ha Lugar por el Tribunal de Primera Instancia.

Inconforme, el 12 de mayo de 2025, la parte peticionaria nos señala en su recurso de *certiorari* la comisión de los siguientes errores:

> **Primer Error: Erró el Tribunal de Primera Instancia al denegar la solicitud de ejecución al amparo de la Regla 51.3 (B) y así dejar al acreedor por sentencia desprovisto de remedio alguno para recobrar una deficiencia de $224,360.85.**
>
> **Segundo Error: Erró el Tribunal de Primera Instancia al aplicar el caso <u>S.L.G Sánchez v. S.L.G. Valentín</u>, 186 DPR 503 (2012), cuando la normativa particular allí esbozada es inaplicable en este caso de cobro de dinero y ejecución de hipoteca en el que se llevó a cabo una subasta con las salvaguardas del tipo mínimo, conforme el derecho hipotecario aplicable.**
>
> **Tercer Error: En la alternativa, erró el Tribunal de Primera Instancia al, bajo su propio análisis, negarse a reconocer una deficiencia igualmente recobrable.**

Por otro lado, el 23 de mayo de 2025, la parte recurrida presentó su *Oposición a Petición de Certiorari*. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II**

**A.**

El auto de *certiorari* es un vehículo procesal extraordinario que le brinda autoridad a un tribunal de mayor jerarquía para revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194 (2023), que cita a: *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG*

---

[17] Apéndice del recurso de *Certiorari*, págs. 12-23.
[18] *Id.* págs. 24-27.

*Builders v. BBVAPR,* 185 DPR 307, 337-338 (2012). Aunque se trata de un recurso discrecional, existen unos parámetros que sirven de guía al momento de decidir si debemos, como foro revisador, expedir o denegar el auto. *IG Builders v. BBVAPR, supra.* De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 (Regla 52.1). En específico, la Regla 52.1 dispone lo siguiente:

> [...]
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
> [...] (Énfasis nuestro.)

Conforme a lo dispuesto en la anterior disposición legal y la jurisprudencia interpretativa, nos corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari.* Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que analizar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de una de las materias específicas establecidas en la Regla 52.1, toda vez que esta enumera taxativamente bajo qué supuestos se podrá expedir el auto de *certiorari.* En aquellos escenarios, en los que la materia no esté comprendida dentro de la citada regla, el tribunal revisor debe negarse a expedir el auto de *certiorari.*

Así las cosas, el primer examen al que debemos someter todo recurso de *certiorari* para determinar si debemos expedirlo es que debe tratar sobre alguna de las materias especificadas en la citada Regla 52.1 de Procedimiento Civil, *supra*. Este examen es mayormente objetivo. Por esto, se ha señalado que "los litigantes deben abstenerse de presentar recursos de *certiorari* para revisar órdenes y resoluciones de asuntos que no estén cobijados bajo las disposiciones de la Regla 52.1". Hernández Colón, *Derecho Procesal Civil*, 5ta ed., LexisNexis, San Juan, 2010, pág. 476.

Superada esta etapa, corresponde analizar si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40), debemos o no expedir el auto de *certiorari*. A esos fines, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es decir, de acuerdo con lo dispuesto en la citada Regla 40, *supra*, debemos evaluar "tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada, a los fines de determinar si es la más apropiada para

intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio." *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008) que cita a *Negrón v. Srio. de Justicia,* 154 DPR 79 (2001). Así pues, la discreción judicial "no se da en un vacío ni en ausencia de otros parámetros",[19] sino que como Tribunal revisor debemos ceñirnos a los criterios antes citados. Si luego de evaluar los referidos criterios, este tribunal decide no expedir el recurso, podemos fundamentar nuestra determinación, mas no tenemos la obligación de así hacerlo.[20]

**B**.

En nuestro ordenamiento jurídico se reconocen tres vías procesales distintas mediante las cuales un acreedor hipotecario puede hacer efectivo su crédito y ejecutar su derecho real. *Atancia Corp. v. J.M. Saldaña, Inc.,* 133 DPR 284, 292 (1993). Entre estas, se encuentra el procedimiento de ejecución de hipoteca por la vía ordinaria. *Id.* El Tribunal Supremo ha expresado que la acción de ejecución de hipoteca por la vía ordinaria es de naturaleza mixta, es decir, es una acción personal y real al mismo tiempo. *First Fed. Savs. v. Nazario et als.,* 138 DPR 872, 879 (1995). Mediante la vía ordinaria, el acreedor puede optar en obtener la satisfacción de su sentencia, que reconoce su crédito hipotecario, mediante el requerimiento de pago personal al deudor o mediante la ejecución de la garantía hipotecaria. *Id.* pág. 880. Este procedimiento es el más utilizado porque permite acumular la acción real y la personal, de modo que, si la deuda resulta ser por una cantidad mayor a la que está garantizada por hipoteca, el acreedor puede optar en intentar cobrar el exceso persiguiendo el patrimonio del deudor. J.L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño,* 3ra ed. rev., San Juan, Puerto Rico, Jurídica

---

[19] *IG Builders v. BBVAPR*, 185 DPR 307, 338 (2012) que cita a *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).
[20] 32 LPRA Ap. V, R. 52.1.

Editores, 2012, pág. 597 citando a *Campos v. Cía. Fom. Ind.*, 153 DPR 137 (2001).

Por otro lado, la Ley Núm. 210 de 2015, mejor conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA sec. 6131, regula en parte el procedimiento de ejecución de hipoteca. En su Artículo 94 establece, entre otras cosas, que una hipoteca vencida en todo o en parte, o sus intereses, puede ser ejecutada por vía judicial. Sobre la comparecencia del acreedor en la venta en pública subasta del bien hipotecado, en el Artículo 106 se establece lo siguiente:

> El acreedor ejecutante podrá concurrir como postor a todas las subastas. Si obtiene la buena pro, se abonará total o parcialmente el importe de su crédito al precio ofrecido por él.
>
> También podrán concurrir como postores a todas las subastas los titulares de créditos hipotecarios vigentes y posteriores a la hipoteca que se cobra y ejecuta, que figuren como tales en la certificación registral.
>
> En tal caso, podrán utilizar el montante de sus créditos o parte de alguno en sus ofertas. Si la oferta aceptada es por cantidad mayor a la suma del crédito o créditos preferentes al suyo, al obtener la buena pro en el remate, deberá satisfacer en el mismo acto, en efectivo o en cheque del gerente, la totalidad del crédito hipotecario que se ejecuta y la de cualesquiera otros créditos posteriores al que se ejecuta pero preferente al suyo. El exceso constituirá abono total o parcial a su propio crédito.
> […]

Del mismo modo, la Regla 51.3 (b) de Procedimiento Civil, *supra*, establece el procedimiento a seguir en la ejecución de hipoteca por la vía ordinaria. Respecto al mismo establece lo siguiente:

> Toda sentencia dictada en pleitos sobre ejecución de hipoteca y otros gravámenes ordenará que la parte demandante recupere su crédito, intereses y costas mediante la venta de la finca sujeta al gravamen. Al efecto, se expedirá un mandamiento al alguacil o a la alguacila, para que lo entregue a la parte interesada, en el que se disponga que proceda a venderla para satisfacer la sentencia en la forma prescrita por la ley para la venta de propiedad bajo ejecución. Si no se encuentra la finca hipotecada o si el resultado de su venta resulta insuficiente para satisfacer la totalidad

de la sentencia, el alguacil o la alguacila procederá a recuperar el resto del dinero o el remanente del importe de la sentencia de cualquiera otra propiedad de la parte demandada, como en el caso de cualquiera otra ejecución ordinaria.

Por otro lado, el Código Civil de 1930, 31 LPRA sec. 5171, en su Artículo 1811, respecto al cumplimiento de los deudores con sus obligaciones establece que estos responden a las obligaciones con todos sus bienes presentes y futuros. Sobre esto, el Tribunal Supremo ha expresado que las hipotecas presuponen la existencia de una obligación por la cual el deudor hipotecario respondería con todos sus bienes presentes y futuros. *Romero v. S.L.G. Reyes*, 164 DPR 721, 737 (2005). Por lo que el acreedor hipotecario tiene derecho de hacer valer su crédito hipotecario contra "todo el patrimonio del deudor y, además, posee un derecho real sobre un bien determinado que responde de la deuda[,] aunque haya pasado a manos de un tercero". *Id.*

**III**

Antes de adentrarnos al recurso ante nuestra consideración, debemos determinar si poseemos jurisdicción bajo la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de del Reglamento del Tribunal de Apelaciones, *supra*. Primeramente, nos corresponde evaluar si el recurso ante nuestra consideración versa sobre alguna de las materias contenidas en la Regla 52.1 de Procedimiento Civil, *supra*.

En segundo lugar, debemos analizar el asunto que se plantea ante nos tomando en consideración los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. Luego de examinar el recurso ante nuestra consideración vemos presente algunos de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. Por ende, procedemos a expedir el recurso ante nos para entrar en

los méritos de la decisión emitida por el Tribunal de Primera Instancia.

La parte peticionaria nos plantea que el Tribunal de Primera Instancia incidió al denegar la solicitud de ejecución al amparo de la Regla 51.3 (B) presentada por este, y así dejar al acreedor por sentencia desprovisto de remedio alguno para recobrar una deficiencia de $224,360.85. Del mismo modo, no alega que el foro de instancia erró al aplicar el *caso S.L.G. Sánchez v. S.L.G. Valentín, supra,* cuando la normativa particular allí esbozada es inaplicable en este caso de cobro de dinero y ejecución de hipoteca. En la alternativa, nos indica que el Tribunal de Instancia incidió al negarse a reconocer que la deficiencia era igualmente recobrable. Por estar relacionados entre sí, procedemos a discutirlos de manera conjunta.

En el caso ante nuestra consideración, el Tribunal de Primera Instancia emitió una *Sentencia* el 30 de octubre de 2020, notificada el 4 de noviembre del mismo año, en la cual condenó a la parte recurrida a pagarle a la parte peticionaria la suma de $265,248.99 sobre el principal de hipoteca, más los intereses al tipo convenido al cinco punto cincuenta por ciento (5.50%) anual, desde el día de su incumplimiento, 1 de septiembre de 2015, hasta su total y completo pago, más los gastos y honorarios de abogado de $32,732.70 dólares según convenido por las partes. Luego, tras la celebración de dos públicas subastas, la parte peticionaria se adjudicó la buena pro de la propiedad por la cantidad de $188, 666.67, quedando una deficiencia de $224,360.85 en concepto de la deuda reconocida por el Tribunal de Primera Instancia en la *Sentencia* que ascendía a la cantidad de $413.027.52. Por tal razón, solicitó al foro primario autorización para el embargo de otros bienes pertenecientes a la parte recurrida con el fin de satisfacer la deuda.

Según el Tribunal de Primera Instancia, no procedía permitir el embargo de otros bienes pertenecientes a la parte recurrida por parte de los peticionarios, pues la deuda quedó extinguida cuando el peticionario se adjudicó la buena pro de la propiedad por la cantidad de $188,666.67, y luego vendió la misma por la cantidad de $315,000.00, recibiendo así un beneficio económico por motivo de su venta que era mayor a la deficiencia de $224,360.85. Del mismo modo, el foro de origen fundamentó su decisión en lo resuelto en el caso *S.L.G. Sánchez v. S.L.G. Valentín, supra,* por lo cual expresó lo siguiente:

> [S]i bien es cierto que la Regla 51.3 de Procedimiento Civil, *supra,* provee para la continuación de ejecución de bienes a favor de la parte demandante hasta que se satisfaga el monto total de la cantidad establecida mediante una sentencia, ésto no es un cheque en blanco para la ejecución desmedida de bienes. Igualmente, indistintamente de que el referido caso *SLG Sánchez v. SLG Valentín, supra,* versara sobre una propiedad no hipotecada, en ninguna parte de dicha opinión el TSPR indica que lo resuelto era única y exclusivamente aplicable a dichas instancias, por el contrario, la opinión mayoritaria hace un análisis detallado de la aplicación de la doctrina de enriquecimiento injusto al proceso de ejecución de sentencia de protección del deudor.

Por tanto, el foro de primera instancia razonó que el permitir que la parte peticionaria ejecutara otros bienes adicionales pertenecientes a los recurridos equivaldría a un enriquecimiento injusto.

Luego de analizar minuciosamente el legajo judicial, el derecho sobre el procedimiento de ejecución de hipoteca por la vía ordinaria y lo resuelto por el Tribunal Supremo en el caso *S.L.G. Sánchez v. S.L.G. Valentín, supra,* resolvemos que erró el Tribunal de Primera Instancia al denegar la solicitud de ejecución de bienes pertenecientes a la parte recurrida al amparo de la Regla 51.3 (B) presentada por la parte peticionaria.

En nuestro ordenamiento jurídico, las acciones de ejecución de hipoteca por la vía ordinaria están reguladas por la Regla 51.3

de Procedimiento Civil, *supra*, y los incisos contenidos en la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, supra*. En específico, el inciso (b) de la Regla 51.3 de Procedimiento Civil, *supra*, establece que, si el resultado de su venta de la propiedad hipotecada resulta insuficiente para satisfacer la totalidad de la sentencia, el alguacil "procederá a recuperar el resto del dinero o el remanente del importe de la sentencia de cualquiera otra propiedad de la parte demandada, como en el caso de cualquiera otra ejecución ordinaria". Del mismo modo, conforme el Artículo 1811 del Código Civil de Puerto Rico de 1930, *supra*, los deudores en cumplimiento de sus obligaciones responden con todos sus bienes presentes y futuros.

Contrario a los fundamentos utilizados por el Tribunal de Primera Instancia, la decisión emitida por el Tribunal Supremo en el caso *S.L.G. Sánchez v. S.L.G. Valentín, supra*, no es de aplicación en cuanto a la controversia del recurso ante nuestra consideración. Esto es así pues no nos encontramos ante un caso en donde un acreedor, no hipotecario, se adjudicó la propiedad del deudor y este pretenda descontar de su acreencia únicamente la cantidad que abonó para adquirir el inmueble mediante subasta sin tomar en consideración el valor de la propiedad inmueble. Del mismo modo, cabe resaltar que el caso precitado no alteró el estado del derecho sobre el proceso de ejecución de hipoteca por la vía ordinaria, por lo que las disposiciones contenidas en las Reglas de Procedimiento Civil, la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, supra* y los artículos del Código Civil siguen rigiendo este procedimiento.

Somos de la posición de que una hipoteca presupone la existencia de una obligación por la cual, como norma general, el deudor responde con todos sus bienes presentes y futuros frente al

acreedor.[21] Por lo que el acreedor hipotecario tiene derecho de hacer efectivo su crédito contra todo bien ejecutable en el patrimonio del deudor.[22] A raíz de lo antes expuesto, resolvemos que la parte peticionaria puede recuperar el restante del dinero adeudado, incluyendo mediante el embargo de los bienes presentes y futuros pertenecientes a la parte recurrida.

**IV**

Por los fundamentos que nos anteceden, expedimos el auto de *certiorari* solicitado, revocamos la resolución recurrida, y se declara ha lugar la *Moción solicitando ejecución de sentencia bajo la Regla 51.3 (b) de Procedimiento Civil* presentada por la parte peticionaria el 9 de enero de 2024.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Aldebol Mora concurre sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] *Romero v. S.L.G. Reyes,* supra.
[22] *Id.*